# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF MICHIGAN

JANE A. DOE by next friend
JANE B. DOE,

                            Plaintiff,                    Case No. 18-cv-

vs.                                            Hon.

MICHIGAN STATE UNIVERSITY;
THE BOARD OF TRUSTEES OF
MICHIGAN STATE UNIVERSITY;
LAWRENCE GERARD NASSAR,
individually and in his official capacity;
USA GYMNASTICS, INC.;
TWISTARS USA, INC. d/b/a GEDDERTS' TWISTARS
GYMNASTICS CLUB USA,

                            Defendants.

_____/

**THE COLEMAN JUSTICE CENTER**
April Kreger (P69319)
Judy C. Coleman (P44310)
*Attorneys for the Plaintiff*
17286 Farmington Rd.
Livonia, Michigan 48152
(734) 744-9410
april@thecolemanjusticecenter.com
judy@thecolemanjusticecenter.com

_____/

## COMPLAINT AND JURY DEMAND

       NOW COMES the Plaintiff, JANE A. DOE, by her next friend, JANE B. DOE, by her

counsel, THE COLEMAN JUSTICE CENTER, by APRIL KREGER and JUDY COLEMAN

and hereby allege and state the following:

### I.     PRELIMINARY STATEMENT AND INTRODUCTION

1. This is a civil action for declaratory, injunctive, equitable and monetary relief for injuries

sustained by Plaintiff as a result of the acts, conduct and omissions of Lawrence Nassar, D.O. (hereinafter referenced as "Defendant Nassar"); Michigan State University (hereinafter referenced as "Defendant MSU"); the Board of Trustees of Michigan State University (hereinafter referenced as "Defendant MSU Trustees"); USA Gymnastics (hereinafter referenced as "Defendant USAG"); and Twistars USA, Inc. (hereinafter referenced as "Defendant Twistars"); and their respective employees, representatives, and agents, relating to sexual assault, abuse, molestation and nonconsensual sexual touching and harassment by Defendant Nassar against the Plaintiff, a female, who was a minor when the sexual assault occurred.

2. Plaintiff is a young athlete participating at a competitive gymnastics level.

3. Defendant Nassar came highly recommended to Plaintiff as a renowned orthopedic sports medicine physician, purportedly well-respected in the sports medicine community, specifically in the gymnastics community as the Team Physician for the United States Gymnastics Team.

4. Plaintiff, by and through her next friend; had no reason to suspect Defendant Nassar was anything other than a competent and ethical physician.

5. From approximately 1997 to August 2016, Defendant Nassar worked for Michigan State University in various positions and capacities.

6. From 1986 to approximately 2015 Defendant Nassar also worked for USA Gymnastics in various positions and capacities.

7. For over 20 years, Defendant Nassar had unfettered access to young female athletes through the Sports Medicine Clinic at MSU, and through his involvement with USAG and Twistars, who referred athletes to his care.

8. To gain Plaintiff's trust, at appointment(s), Defendant Nassar gave the Plaintiff gift(s) such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without.

9.  During 2015 and 2016, under the guise of treatment, Defendant Nassar sexually assaulted; abused; and molested Plaintiff, a minor child, by nonconsensual vaginal penetration and without the use of gloves or lubricant.  Defendant Nassar also smacked; cupped; and manipulated the Plaintiff's buttocks under the guise of medical treatment for back pain.

10. Plaintiff was seeking treatment for athletic injuries she received while participating in gymnastics to her back; ankle; and wrist.

11. The assaults were carried out at Twistars and Defendant Nassar's office(s).

12. The age of the Plaintiff assaulted between 2015 and 2016 was 15 years old and 16 years old, respectively.

13. Beginning in 1999 and continuing over the years, complaints of Defendant Nassar's assaultive conduct were received by MSU employees, representatives and/or agents, yet MSU failed to take any action on the complaints until Defendant Nassar's termination on September 20, 2016.

14. Plaintiff was seen alone with only the individual Plaintiff and Defendant Nassar in the room, without chaperones.

15. Another time, Defendant Nassar positioned himself in plain view of the parent and proceeded to smack; cup and manipulate Plaintiff's buttocks (while she was on an examining table) under the guise of being evaluated and treated for back pain/injury.

16. Because MSU took no action to investigate the myriad of complaints received by various females (beginning in 1999 and continuing throughout for years) and took no corrective action, from 2015 to 2016, under the guise of treatment, Plaintiff, a minor, was sexually assaulted, abused and molested by Defendant Nassar by nonconsensual vaginal digital penetration,

nonconsensual sexual touching of the vaginal area without the use of gloves or lubricant, and nonconsensual touching, smacking, cupping and manipulation of the Plaintiff's buttocks.

17. Plaintiff was assaulted by Defendant Nassar at his office(s) as well as at Twistars location.

18. Additional complaints regarding Defendant Nassar's conduct surfaced in 2014 when a victim reported she had an appointment with Defendant Nassar to address hip pain and was sexually abused and molested by Defendant Nassar when he cupped her buttocks, massaged her breast and vaginal area and became sexually aroused[1].

19. It was reported that after Defendant MSU investigated the 2014 complaints through their Office of Institutional Equity, and although the victim reported to Defendant MSU certain facts, some were omitted from the investigative report including but not limited to the following:

    A.  Defendant Nassar was sexually aroused while touching her;

    B.  The appointment with Defendant Nassar did not end until she physically removed his hands from her body.

20. Three months after initiating the investigation, in July 2014, the victim's complaints were dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Defendant Nassar's conduct "medically appropriate" and "not of a sexual nature."[2]

21. Following the investigation, and upon information and belief, Defendant Nassar became

---

[1] *See,* At MSU:  Assault, harassment and secrecy. Matt Mencarini, December 15, 2016. Available at:  https://www.lansingstatejournal.com/story/news/local/2016/12/15/michigan-state-sexual-assault-harassment-larry-nassar/94993582/

[2] *Id.*

4

subject to new institutional guidelines, one of which—it is believed—was that Defendant Nassar was not to examine or treat patients alone.[3]

22. However, Defendant Nassar continued to treat patients alone.

23. Following the investigation, between approximately 2015 and 2016, Plaintiff was sexually assaulted by Defendant Nassar.

24. Through his position with MSU, his notoriety, and support by USAG and Twistars, Defendant Nassar used his position of authority as a medical professional to abuse Plaintiff without any reasonable supervision by MSU or USAG.

25. Defendant Nassar carried out these acts without fully explaining the "treatment" or obtaining consent of Plaintiff or her parents.

26. ALL of Defendant Nassar's acts were conducted under the guise of providing medical care at his office at Michigan State University or at Twistars.

27. The failure to give proper notice or to obtain consent for the purported "treatment" from Plaintiff or her parents robbed her of the opportunity to reject the "treatment."

28. Defendant Nassar used his position of trust and confidence in an abusive manner causing Plaintiffs to suffer a variety of injuries including shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, loss of self-esteem, disgrace and loss of enjoyment of life.

29. After September 2016, victims began coming forward after reports by the news and media made headlines.

30. Victims began coming forward after recognizing that they were victims of sexual abuse at a time when most of them were minors.

---

[3] *Id.*

31. Plaintiff has been forced to relive the trauma of the sexual assault(s).

32. Upon information and belief, in the summer of 2015, USA Gymnastics relieved Defendant Nassar of his duties after becoming aware of concerns about his actions, yet USAG purportedly failed to inform Michigan State University of the circumstances surrounding his dismissal.

33. As early as 1999, representatives of Michigan State University were made aware of Defendant Nassar's conduct, yet failed to appropriately respond to allegations, resulting in the sexual assault, abuse and molestation of the Plaintiff from 2015 through 2016.

34. Michigan State University's deliberate indifference before, during and after the sexual assault, abuse and molestation complaints of numerous victims was in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681, *et. seq.,* 42 U.S.C. §1983, as well as other Federal and State laws.

35. MSU and USAG's failure to properly supervise Defendant Nassar and their negligence in retaining Defendant Nassar was in violation of Michigan common law.

36. In late November 2016, Defendant Nassar was arrested and charged in Ingham County, Michigan on three charges of first-degree criminal sexual conduct with a person under 13[4].

37. In mid-December 2016, Defendant Nassar was indicted; arrested; and charged in Federal Court in Grand Rapids, Michigan on charges of possession of child pornography and receipt/attempted receipt of child pornography.

38. In December 2017, Defendant Nassar was sentenced to 60 years in prison on the Federal charges.

39. In January 2018, Defendant Nassar was sentenced to 40-175 years in prison on sexual

---

[4] Ingham County Circuit Court Case No. 1603031.

assault charges after the conclusion of a 7 days sentencing hearing in which over 150 women and girls said he sexually abused them.

40. The acts; conduct; and omissions of Defendants MSU, USAG; and Twistars coupled with their policies, customs, and practices with respect to investigating sexual assault allegations severely compromised the safety and health of the Plaintiff and an unknown number of individuals, and have resulted in instances of sexual assault, abuse and molestation of the Plaintiff by Defendant Nassar, which has been devastating for the Plaintiff and her family.

41. This action arises from Defendants' blatant disregard for Plaintiff's federal and state rights, and Defendants' deliberately indifferent and unreasonable response to physician-on-patient/physician-on-student sexual assault, abuse and molestation.

## II.    JURISDICTION AND VENUE

42. This action is brought pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681, *et. seq.,* as more fully set forth herein.

43. This is also an action to redress the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. §1983.

44. Subject matter jurisdiction is founded upon 28 U.S.C. §1331 which gives district courts jurisdiction over all civil actions arising under the Constitution, laws and treaties of the United States.

45. Subject matter jurisdiction is also founded upon 28 U.S.C. §1343 which gives district courts original jurisdiction over any civil actions authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction

of the United States, and any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

46. Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. §1367(a) to hear and decide claims arising under state law that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

47. The claims are cognizable under the United States Constitution, 42 U.S.C. §1983, 20 U.S.C. §1681 *et. seq.,* and under Michigan Law.

48. The events giving rise to this lawsuit occurred in Eaton County, Michigan (Dimondale, Michigan-Twistars location) and Ingham County, Michigan (Defendant Nassar's MSU office location).

49. However, the Plaintiff resides in Oakland County, Michigan which sits in the Eastern District of Michigan.

50. Venue is proper in the United States District Court for the Eastern District of Michigan, pursuant to 28 U.S.C. §1391(b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

51. Because Michigan State University is a public university organized and existing under the laws of the State of Michigan and Michigan statutory law requires parties to file a Notice of Intention to File Claim in order to maintain any action against the state, in satisfaction of MCL §600.6431.  Plaintiff filed a Notice of Intent to File Claim with the Michigan Court of Claims on September 10, 2018.

### III.    PARTIES AND KEY INDIVIDUALS

52. Plaintiff reallege and incorporate by reference the allegations contained in the previous paragraph as if fully restated herein.

53. The name of the Plaintiff, as well as her next friend, has been withheld from this Complaint to protect her identity[5].

54. Plaintiff Jane A. Doe is a minor female and is a resident of Michigan.

55. Plaintiff Jane B. Doe is an adult female, the mother of Plaintiff Jane A. Doe, and is a resident of Michigan.

56. Plaintiff Jane A. Doe was a minor at the times she was sexually assaulted, abused and molested by Defendant Nassar.

57. Upon information and belief, Defendant Nassar is currently an inmate in the custody of the Federal Bureau of Prisons.

58. Upon information and belief, Defendant Nassar is currently house in United States Penitentiary Tucson in Tucson, Arizona serving his federal sentence.

59. Defendant MSU was at all relevant time and continues to be a public university organized and existing under the laws of the State of Michigan.

60. Defendant MSU receives federal financial assistance and is therefore subject to the provisions found in Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681(a).

61. Defendant MSU Trustees is the governing body for Defendant MSU.

62. Defendant MSU and Defendant MSU Trustees are hereinafter collectively referred to as the MSU Defendants.

63. Defendant USAG was and continues to be an organization incorporated in Indiana, authorized to conduct business and conducting business throughout the United States, including but not limited to Michigan.

---

[5] Plaintiff will seek an Order of the Court regarding disclosure of Plaintiff's identity and all conditions for disclosure.

64. Defendant USAG advertises on its website: "Since 1990-prior to almost all other National Governing Bodies-USA Gymnastics has provided awareness, prevention and reporting information regarding sexual misconduct to professional members, athlete members and their families."[6]

65. Upon information and belief, the entire board of directors of Defendant USAG resigned in or about January 2018.

66. The United States Olympic Committee (hereinafter referenced as "USOC,") is the National Olympic Committee for the United States of America charged with overseeing U.S. Teams for the Olympic Games.

67. The USOC, established under the Ted Steven Olympic and Amateur Sports Act (36 U.S.C. §220501, *et. seq.,* formerly the Amateur Sports Act of 1978), provides for the National Governing Bodies for each Olympic Sport.

68. The USOC has designated USAG as the National Governing Body for the Olympic sport of Gymnastics in the United States of America.

69. Defendant Twistars was and continues to be an organization incorporated in and doing business in Michigan.

70. John Geddert is the owner and operator of Defendant Twistars.

71. Defendant Twistars advertises on its website: "We are proud to be a National Team Training Center for USA Gymnastics and the home of multiple International Elite US National Team Members."[7]

---

[6] *See,* https://usagym.org/pages/education/safesport/, last accessed, September 8, 2018.

[7] *See,* https://twistarsusa.com/classes/competitive-team/ last accessed, September 8, 2018.

## IV.    FACTUAL ALLEGATIONS

72. Plaintiff reallege and incorporate by reference the allegations contained in the previous paragraph as if fully restated herein.

73. At all relevant times, Defendant Nassar maintained offices at MSU in East Lansing, Michigan.

74. At all relevant times, Defendants MSU and Defendant Nassar were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of Michigan and/or Defendant Michigan State University.

75. At all relevant times Defendant Nassar was acting within the scope of his employment or agency with Defendant MSU.

76. At all relevant times Defendant Nassar was acting within the scope of his employment or agency with Defendant USAG.

77. At all relevant times Defendant Nassar was acting in the scope of his agency with Defendant Twistars.

78. Defendant Nassar graduated from Michigan State University with a Doctor of Osteopathic Medicine degree in approximately 1993.

79. Defendant Nassar was employed by and/or an agent of Defendant USAG from approximately 1986 to 2015, serving in various positions including but not limited to:

     A.  Certified Athletic Trainer;

     B.  Osteopathic Physician;

     C.  National Medical Director;

     D.  National Team Physician, USAG;

     E.  National Team Physician, USAG Women's Artistic Gymnastics National Team.

80. Defendant Nassar was employed by Defendant MSU from approximately 1996 to 2016 in various positions including but not limited to:

    A.  Associate Professor, Defendant MSU's Division of Sports Medicine, Department of Radiology, College of Osteopathic Medicine;

    B.  Team Physician, Defendant MSU's Men's and Women's Gymnastics Team;

    C.  Team Physician, Defendant MSU's Men's and Women's Track and Field Teams;

    D.  Team Physician, Defendant MSU's Men's and Women's Crew Team;

    E.  Team Physician, Defendant MSU's Intercollegiate Athletics;

    F.  Medical Consultant, Defendant MSU's Wharton Center for the Performing Arts;

    G.  Advisor, Student Osteopathic Association of Sports Medicine.

81. Defendant Twistars is a gymnastics facility with which Defendant Nassar affiliated from its inception in or around 1996.

82. John Geddert, owner and operator of Twistars USA, Inc. d/b/a Geddert's Twistars Gymnastics Club USA served as the USA World and Olympic Women's Gymnastics Team Head Coach.

83. Mr. Geddert regularly recommended Defendant Nassar to members of Defendant Twistars as a reputable physician.

84. For a period of time, Defendant Twistars displayed a photo of Defendant Nassar at its facility.

85. As an agent of Defendant Twistars, Defendant Nassar regularly provided services and treatment to Defendant Twistars' members and Defendant USAG's members on Defendant Twistars' premises.

86. As a physician of Osteopathic Medicine, Defendant Nassar's medical care and treatment

should have consisted largely of osteopathic adjustments and kinesiology treatment to patients.

87. Defendant Nassar is not and has never been a medical doctor of obstetrics or gynecology.

88. While employed by Defendants MSU and USAG, Defendant Nassar practiced medicine at Defendant MSU's Sports Medicine Clinic, a facility at MSU.

89. As an Assistant and/or Associate Professor for Defendant MSU Division of Sports Medicine, Defendant Nassar provided medical services for Defendant MSU's Sports Medicine Clinic.

90. For over twenty (20) years, Defendant MSU's Sports Medicine Clinic has provided health care to MSU student athletes, and others.[8]

91. The MSU Sports Medicine Clinic did not provide medical services for the common good of all, but rather for its paying clients.

92. The MSU Sports Medicine Clinic engaged in proprietary functions by entering into the business of providing medical services for the primary purpose of raising funds and making profit for the MSU Defendants.

93. The MSU Sports Medicine Clinic cannot be and is not normally supported by taxes and fees.

94. By seeking medical treatment and services from Defendant MSU's Sports Medicine Clinic and from Defendant Nassar while in the course and scope of his employment, agency and/or representation with the MSU Defendants, a special, confidential, and fiduciary relationship existed between Plaintiffs, the MSU Defendants, and Defendant Nassar.

95. As part of Defendant Nassar's employment and contractual duties with MSU, Defendant Nassar was responsible for spending time engaged in "outreach" or "public services."

---

[8] *See,* "MSU SportsMedicine," http://sportsmed.msu.edu/, Last accessed, September 9, 2018.

96. Defendant Nassar's "outreach" or "public service" included providing medical treatment to athletes affiliated with Defendant USAG and Twistars, as well as other organizations.

97. When the MSU Defendants operated the MSU Sports Medicine Clinic and provided medical services to the Plaintiff (as well as other Plaintiffs in referenced lawsuits stated herein), they were acting as an arm of the state.

98. The MSU Sports Medicine Clinic charged patients, including the Plaintiff, for their medical services.[9]

99. Charging the Plaintiff (as well as other Plaintiffs in referenced lawsuits stated herein) and billing her insurance company for medical services is an activity proprietary in nature.

100.    In order to participate in USAG sanctioned events, it is necessary to be a USAG member.

101.    To obtain membership with USAG, an individual must pay dues.

102.    Similarly, in order for a gymnastics club to be considered a USAG member club, the gymnastics club must also pay dues, and if the member club seeks to hold a USAG sanctioned event at the club, the club must pay a fee.

103.    All those who seek to coach, judge, or participate in USAG sanctioned events must also pay a membership fee.

104.    The exchange of money for membership creates a fiduciary relationship and duty between USAG, their members/athletes, coaches, judges, and their clubs.

105.    Defendant USAG regularly recommended Defendant Nassar to its members as a reputable physician.

106.    Defendant Twistars is a gymnastics facility with which Defendant Nassar

---

[9] *See,* http://sportsmed.msu.edu/patients.html, Last accessed, September 9, 2018.

affiliated from its inception in or around 1996.

107.    John Geddert, owner and operator of Twistars USA, Inc. d/b/a Geddert's Twistars Gymnastics Club USA, served as the USA World and 2012 Olympic Women's Gymnastics Team Head Coach.

108.    Defendant Twistars is a USAG member club and ostensible agent of Defendant USAG.

109.    Defendant Twistars required its gymnasts, especially those with aspirations of competing, to become USAG members and pay membership fees to Defendant USAG.

110.    Club membership in Defendant USAG is a substantial benefit for Twistars and Geddert, as membership with Defendant USAG and participation in Defendant USAG sanctioned events is a considerable factor that interested gymnasts consider in joining a gymnastics club-particularly gymnasts who have collegiate, national or Olympic aspirations in competitive gymnastics.

111.    Geddert served as an agent of Defendant USAG and served as the 2011 USA World Championship Team Head Coach and the 2012 USA Olympic Team Head Coach through his affiliations with Defendant USAG and Defendant Twistars.

112.    According to Defendant Twistars website, in relation to Geddert being named head coach for the USA Olympic and World Championships Gold Medal Winning team-painted the picture of national respect and honor.

113.    During his tenure as an Olympic head coach, Geddert learned of allegations by

gymnasts on his team that Defendant Nassar sexually abused and assaulted them dating as far back as 2010.[10]

114.    Geddert regularly recommended Defendant Nassar to members of Defendant Twistars as a reputable physician that "everybody uses."

115.    The relationship between Defendant USAG, Defendant Twistars, Defendant Nasser, Geddert (owner and founder of Defendant Twistars), and the MSU Defendants was symbiotic in nature, in that the Defendants, along with Twistars and Geddert, enjoyed financial benefits from one another and that was reliant on one another to continue receiving said benefits.

116.    The MSU Defendants received financial benefits from its relationship with Defendant Nassar, Defendant USAG and Defendant Twistars, including increased patients to the MSU Sports Medicine Clinic, increased billings, revenue, and profit for the MSU Sports Medicine Clinic and national and international recognition, fame and prestige.

117.    Defendant Nassar received financial benefits from his relationship with Defendant USAG, Defendant Twistars, Geddert and the MSU Defendants, including but not limited to increased patients at the MSU Sports Medicine Clinic, additional billing, revenue, and profit for the MSU Sports Medicine Clinic and national and international recognition, fame and prestige.

118.    Defendant USAG received financial benefits from its relationship with Defendant Twistars, Geddert, MSU Defendants and Defendant Nassar, including but not limited to increased membership in its organization, increased or additional membership fees, and national and international recognition, fame and prestige.

119.    Geddert and Defendant Twistars received financial benefits from its relationship

---

[10] *See,* Case 1:18-cv-00433, ECF No. 1, United States District Court, Western District of Michigan-Southern Division.

with Defendant USAG and Defendant Nassar, including but not limited to increased membership in the gym, membership fees, and national and international recognition, fame and prestige.

120.     As an agent of Defendant Twistars, Defendant Nassar regularly provided services and treatment to Twistars' members and Defendant USAG's members on Defendant Twistar's premises.

121.     As a physician of Osteopathic Medicine, Defendant Nassar's medical care and treatment should have consisted largely of osteopathic adjustments and kinesiology treatment to patients, including students and student-athletes of Defendant MSU.

122.     Defendant Nassar is not and has never been a medical doctor of obstetrics or gynecology.

123.     Defendant Nassar is not and has never been trained or certified as a pelvic floor therapist.

124.     While employed by Defendants MSU and Defendant USAG, Defendant Nassar practiced medicine at Defendant MSU's Sports Medicine Clinic, a facility at MSU.

125.     During his employment, agency and representation with the MSU Defendants, Defendant USAG, and Defendant Twistars, Defendant Nassar sexually assaulted, abused, and molested the Plaintiff by engaging in nonconsensual sexual touching, assault, and harassment including but not limited to digital vaginal penetration as well as smacking, fondling, and manual manipulation of the buttocks.

126.     The State of Michigan's Department of Licensing and Regulatory Affairs

Occupational Health Standards regarding Bloodborne Infectious Diseases mandates use of gloves when exposed to potentially infectious material, including vaginal secretions.[11]

127.     Defendant MSU, through its Sports Medicine Clinic and Defendant Nassar, provided medical care and treatment to the Plaintiff who was a patient of Defendant Nassar.

128.     Plaintiff was a business invitee at the MSU Sports Medicine Clinic where she was supposed to receive medical care and treatment by Defendant Nassar, free of harm.

129.     Dating back to 1997, a parent of a gymnast (not this Plaintiff) at Defendant Twistars' facility complained to Mr. Geddert regarding Defendant Nassar's improper conduct, yet the concerns and allegations went unaddressed.

130.     A few years later, around 1999, the MSU Defendants were also put on notice of Defendant Nassar's conduct by other victim(s) when complaints were voiced to MSU employees (coaches and trainers) with complaints of inappropriate sexual contact.

131.     Complaints about Defendant Nassar to the MSU Defendants dating back to the late-90's fell upon deaf ears and no action was taken against Defendant Nassar.

132.     In further detail, another female victim provided the following statements alleging sexual assault against Defendant Nassar[12]:

> "Plaintiff is informed and believes, and on that basis alleges, that Defendants knew Or should have known that NASSAR had engaged in unlawful sexually-related Conduct in the past, and/or was continuing to engage in such conduct.  Defendants had a duty to disclose these facts to Plaintiff, her parents and others, but negligently and/or intentionally suppressed, concealed or failed to disclose this information. The duty to disclose this information arose by the special, trusting, confidential, fiduciary relationship between Defendants and Plaintiff.  Specifically, the fiduciary relationship between Defendant MSU knew that NASSAR was performing intravaginal adjustments with his bare, ungloved hand and in isolation with young

---

[11] *See,* https://www.michigan.gov/documents/CIS_WSH_part554_35632_7.pdf. Last accessed, September 8, 2018.
[12] *See,* Case 1:17-cv-00029, ECF No. 1, United States District Court, Western District of Michigan-Southern Division.

18

females, based on the following:

a. The Plaintiff, approximately 18 years old at the time, had a visit with NASSAR where he touched her vagina, in order to purportedly heal back pain she was having, under the guise of legitimate medical treatment. The Plaintiff complained to a trainer on her softball team who responded by saying that NASSAR was a world renowned doctor, and that it was legitimate medical treatment. The Plaintiff continued with the purported treatment;

b. As the purported treatments continued, NASSAR became more bold, having the Plaintiff remove her pants, and then inserting his bare, ungloved and unlubricated hand into her vagina. The Plaintiff, again, reported to Defendant MSU training staff, this time a higher ranking trainer.  This trainer told the Plaintiff that the treatment sounded unusual and that the Plaintiff needed to speak to an even higher level trainer in the Department, who ended up being one of three individuals who supervised the entire department at Defendant MSU;

c. When the Plaintiff went to see this individual, the Plaintiff was told by that individual that what happened to the Plaintiff was not sexual abuse, that NASSAR was a world renowned doctor, and that the Plaintiff was not to discuss what happened with NASSAR and was to continue seeing him for purported treatment. The Plaintiff continued to see NASSAR for treatment.

d. Finally, or around 2001, the Plaintiff refused to continue to see NASSAR for these abusive and invasive procedures.  Defendant MSU then pressured and coerced the Plaintiff to declare herself medically inactive.  The Plaintiff was shunned from the Defendant MSU sports program, and left Defendant MSU to return home to California.”[13]

133.    Despite one of the Plaintiff's complaints to MSU employees, agents and representatives, that Plaintiff's concerns and allegations went unaddressed in violation of reporting policies and procedures and Title IX and in a manner that was reckless, deliberately indifferent, and grossly negligent.[14]

134.    Because MSU took no action to investigate these prior complaints (from previous victims) and took no action over the years, from 2015 to 2016, and under the guise of treatment, *this action's* Plaintiff Jane A. Doe, a minor, was also sexually assaulted, abused and molested by

---

[13] *Id.*
[14] *Id.*

Defendant Nassar by vaginal digital manipulation and penetration (and without gloves or lubricants), as well as the smacking and manual manipulation of the buttocks.

135.     Defendant MSU is not immune from liability as it failed to warn Plaintiff of the known or foreseeable danger regarding complaints related to Defendant Nassar as early as 1997/1998 and failed to train its employees, representatives, and agents about such dangers and to warn and protect the Plaintiff from such dangers, and otherwise failed to supervise and train employees of the MSU Sports Medicine Clinic to act in a manner consistent with a reasonably prudent facility.

136.     To gain his patients' trust, at appointments, Defendant Nassar would give some Plaintiffs gifts such as t-shirts, pins, flags, leotards and other items.

137.     Pursuant to Defendant Nassar's scheme and intent, he also gave the Plaintiff a gifted t-shirt.

138.     Additionally, Defendant Nassar would also see patients outside of normal business hours at his office at MSU and other locations (i.e. Twistars location in Dimondale, Michigan) in an effort to gain the patient's trust.

139.     Defendants never trained, educated, or warned Plaintiff, who was a patient of the Defendants and a member, that the actions described herein were warning signs for sexual abuse and sexual assault.

140.     Because of the special and fiduciary relationship shared between the MSU Defendants, Defendant USAG and Defendant Twistars and the Plaintiff, each Defendant had a legal duty to exercise reasonable care toward the Plaintiff, who was their patient and member.

141.     The MSU Defendants, Defendant USAG and Defendant Twistars has a duty to exercise reasonable care in supervising Defendant Nassar while he was their employee or agent.

20

142.    The best of Plaintiff's knowledge, neither the MSU Defendants, or Defendant USAG and Defendant Twistars had or enforced a policy which required their patients and members to have the presence of a chaperone (i.e. parent, guardian, resident, nurse, etc.) when treating in a private or sensitive area.

143.    Collectively, Defendants' failures as described above left Plaintiff vulnerable and susceptible to sexual assault and abuse, which ultimately happened.

144.    Collectively, Defendants breached the duties they owed to the Plaintiff and ultimately failed to exercise reasonable care, leaving her vulnerable to be sexually abused, assaulted, and molested by Defendant Nassar.

145.    In 2014, following receipts of an unrelated complaint regarding a sexual assault on Defendant MSU's campus between 2014 and 2015 the U.S. Department of Education's Office of Civil Rights (hereinafter "OCR") conducted an investigation regarding the complainant's allegations, another complaint regarding sexual assault and retaliation from 2011, and Defendant MSU's response to said complaints and their general policies, practices, and customs pertaining to their responsibilities under Title IX.[15]

146.    The OCR concluded their investigation in 2015 and presented Defendant MSU with a twenty-one page agreement containing measures and requirements to resolve the 2011 and 2014 complaints and to bring Defendant MSU in compliance with Title IX.[16]

147.    While the OCR was conducting their investigation, additional complaints

---

[15] *See,* https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf, last accessed September 9, 2018.
[16] *See,* https://www2.ed.gov/documents/press-releases/michigan-state-agreement.pdf, last accessed September 9, 2018.

regarding Defendant Nassar's conduct surfaced in 2014. The victim reported she had an appointment with Defendant Nassar to address hip pain and was sexually abused and molested by Defendant Nassar when he cupped her buttocks, massaged her breast and vaginal area, and he became sexually aroused.[17]

148.     Upon information and belief, Defendant MSU investigated the 2014 complaints through their Office of Institutional Equity.

149.     However, the victim reported to Defendant MSU facts which were omitted or withheld from the investigative report including but not limited to the following:

    A.  Defendant Nassar was sexually aroused while touching her;

    B.  The appointment with Defendant Nassar did not end until she physically removed his hands from her body.[18]

150.     Three months after initiating the investigations, in July 2014, the victim's complaints were dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Defendant Nassar's conduct "medically appropriate" and "not of a sexual nature."[19]

151.     Following the investigation, upon information and belief, Defendant Nassar became subject to new institutional guidelines, including the following:

    a.  Defendant Nassar was not to examine or treat patients alone but was to be accompanied by a chaperone such as a resident or nurse;

---

[17] *See,* https://www.lansingstatejournal.com/story/news/local/2016/12/15/michigan-state-sexual-assault-harassment-larry-nassar/94993582/, last accessed September 8, 2018.
[18] *Id.*
[19] *Id.*

b.  The alleged "procedure" was to be altered to ensure there would be little to no skin to skin contact when in certain "regions" and if skin to skin contact was "absolutely necessary" the "procedure" was to be explained in detail with another person in the room for both the explanation and the "procedure;" and,

c.  New people in the practice were to be "oriented" to ensure understanding with the guidelines.[20]

152.    From July 2014 to September 2016, despite complaints about Defendant Nassar's conduct, Defendant MSU continued to permit Defendant Nassar unfettered access to female athletes without adequate oversight or supervision to ensure he was complying with the new guidelines.

153.    After receiving allegations of "athlete concerns," sometime in the summer 2015, Defendant USAG relieved Defendant Nassar of his duties.[21]

154.    At no time did Defendant USAG inform Defendants MSU or other MSU representatives of the concerns that led to Defendant Nassar being relieved from his duties with Defendant USAG or was under criminal investigation.

155.    In fact, Defendant Nassar represented publicly that he "retired" from his duties with Defendant USAG.

156.    However, Defendant Nassar continued to sexually assault, abuse and molest young women and girls following his "retirement" from USAG, with the Plaintiff being one of them.

---

[20] *Id.*
[21] *See,* Former USA Gymnastics doctor accused of abuse, Mark Alesia, Marisa Kwiatkowski, Tim Evans, September 12, 2016.  Available at, https://www.indystar.com/story/news/2016/09/12/former-usa-gymnastics-doctor-accused-abuse/89995734/, Last accessed, September 9, 2018.

157.     From July 2014 to September 2016, despite complaints about Nassar's conduct, Defendant MSU continued to permit Defendant Nassar unfettered access to female athletes without adequate oversight or supervision to ensure he was complying with the new guidelines.

158.     Defendant Nassar's employment ended with Defendant MSU on approximately September 20, 2016 only after the MSU Defendants became aware that:

   A.  Defendants Nassar and USAG were sued by a former Olympian who alleged she was sexually assaulted by Defendant Nassar;[22] and,

   B.  A former patient of Defendant Nassar, Plaintiff Rachel Denhollander, filed a criminal complaint with the Michigan State University Police Department alleging Defendant Nassar sexually assaulted her when she was 15 years old and seeking treatment for back pain as a result of gymnastics.  Plaintiff Denhollander's allegations of sexual assault by Defendant Nassar included, but were not limited to the following allegations:

      a.  Massaging her genitals;

      b.  Penetrating her vagina and anus with his finger and thumb; and,

      c.  Unhooking her bra and massaging her breasts.[23]

159.     To the best of Plaintiff's knowledge, Defendant Nassar is currently in federal custody after being charged; held on bond; and subsequently sentenced on his numerous convictions.

---

[22] *See*, www.documentcloud.org/documents/3106054-JANE-JD-COMPLAINT-Signed.html. Last accessed September 9, 2018.

[23] *See,* Former USA Gymnastics doctor accused of abuse, Mark Alesia, Marisa Kwiatkowski, Tim Evans, September 12, 2016.  Available at, https://www.indystar.com/story/news/2016/09/12/former-usa-gymnastics-doctor-accused-abuse/89995734/, Last accessed, September 9, 2018.

160.     At the sentencing hearing approximately 204 victim impact statements were given over 9 days with Defendant Nassar being sentenced to 40-175 years in prison for sexual assault.

161.     During and in the wake of the sentencing hearings:

A.  Geddert (owner of Defendant Twistars) was suspended by Defendant USAG on or around January 22, 2018, announced his retirement a few days later and then transferred his ownership interest and control of Twistars to his wife, Kathryn Geddert;

B.  The president of MSU resigned on January 24, 2018;

C.  The Athletic Director of MSU resigned on January 26, 2018;

D.  By January 31, 2018, the entire board of Defendant USAG resigned under threat of decertification by the USOC; and

E.  Numerous other high level officials of Defendant USAG resigned.

### PLAINTIFF JANE A. DOE BY NEXT FRIEND JANE B. DOE'S SPECIFIC FACTUAL ALLEGATIONS

162.     Plaintiff reallege and incorporate by reference the allegations contained in the previous paragraph as if fully restated herein.

163.     Plaintiff Jane A. Doe began her gymnastics career when she was 5-6 years old with Michigan Elite Gymnastics Company ("MEGA").

164.     After spending numerous years with MEGA and wanting to pursue gymnastics on a more elite and competitive level, Plaintiff joined up with Defendant Twistars.

165.     Defendant Twistars was a well-known, prestigious and reputable company in which a young athlete could pursue Olympic dreams.

166.     After joining Defendant Twistars, Plaintiff Jane A. Doe was on an Olympic track in the sport of gymnastics.

167.     Plaintiff Jane A. Doe, a minor, met Defendant Nassar at her first Twistars meet when she was approximately 12-13 years old.

168.     Almost immediately Plaintiff began hearing other girls talk of Defendant Nassar's "exams."

169.     Plaintiff was told by other girls affiliated with Defendant Twistars on numerous occasions that Defendant Nassar's "exams" were "fine" and it "was just Larry."

170.     Throughout the years, Plaintiff was told and it was expected that she would treat with Defendant Nassar if any sports related injuries occurred.

171.     In August 2014, Plaintiff received a wrist injury at Defendant Twistars Dimondale location.

172.     In August 2015, Plaintiff received a right ankle injury and back injury/pain at Defendant Twistars Dimondale location.

173.     In February 2016, Plaintiff injured her back at Defendant Twistars Dimondale location.

174.     During 2015 and 2016 Plaintiff Jane A. Doe, a minor, was 15 and 16 years old, respectively.

175.     In 2015 after a practice at Defendant Twistars Dimondale location, Plaintiff Jane A. Doe (15 years old), a minor, was "examined" by Defendant Nassar in the back room after practice (it was late in the evening) for complaints of back pain as a result of gymnastics.

176.     During this appointment, Plaintiff Jane A. Doe was alone with Defendant Nassar.

177.     During this appointment, Defendant Nassar, without consent or notice, palpated, touched, and rubbed Plaintiff Jane A. Doe's genital area without the use of gloves or lubricant under her spandex practice clothes (via skin on skin contact).

26

178.    During this appointment, Defendant Nassar digitally penetrated Plaintiff Jane A. Doe's vagina without the use of gloves or lubricant and without consent or notice.

179.    While Defendant Nassar digitally penetrated Plaintiff Jane A. Doe's vagina, he applied pressure causing her pain and discomfort.

180.    Plaintiff Jane A. Doe did not treat or intend to treat with Defendant Nassar for GYN issues.

181.    Defendant Nassar did not give prior notice or obtain consent for digital penetration (or touching of the genital area) from Jane A. Doe or Jane B. Doe (her next friend in this action).

182.    In June of 2016, Plaintiff Jane A. Doe was again "examined" by Defendant Nassar for complaints of a back injury/back pain.

183.    Plaintiff Jane A. Doe, a minor, was only 16 years old during this particular "exam" by Defendant Nassar.

184.    This "exam" took place at Defendant Nassar's MSU office location.

185.    During this exam, Defendant Nassar smacked; cupped; grabbed; rubbed; and manipulated Plaintiff Jane A. Doe, a minor's buttocks under the guise of treatment.

186.    Defendant Nassar did not give prior notice or obtain consent for smacking; cupping; grabbing; rubbing; and manipulating Plaintiff Jane A. Doe, a minor's buttocks.

187.    Plaintiff Jane A. Doe, by her next friend, Jane B. Doe believe the conduct by Defendant Nassar was sexual assault, abuse and molestation and for Defendant Nassar's pleasure and self-gratification.

188.    Prior to her "exams" with Defendant Nassar, Plaintiff had not yet been seen or

examined by a doctor, internally for GYN purposes.  This was Plaintiff's first experience with an internal GYN "exam."

## V.    CLAIMS AGAINST MICHIGAN STATE UNIVERSITY DEFENDANTS

### A.  COUNT ONE

### VIOLATIONS OF TITLE IX
### 20 U.S.C. §1681(A), *et. seq.*
### DEFENDANTS MSU, MSU TRUSTEES

189.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

190.    Title IX's statutory language states, "no *person* in the United States shall on the basis of sex, be…subject to discrimination under any education program or activity receiving Federal financial assistance…"[24]

191.    Plaintiff is a "person" under the Title IX statutory language.

192.    Defendant MSU receives federal financial assistance for its education program and is therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. §1681(a), *et. seq.*

193.    Defendant MSU is required under Title IX to investigate allegations of sexual assault, sexual abuse, and sexual harassment.

194.    The U.S. Department of Education's Office of Civil Rights has explained that

---

[24]U.S. Dept. of Ed., Office of Civil Rights, Dear Colleague Letter:  Sexual Violence, April 4, 2011, n. 11 ("Title IX also protects third parties from sexual harassment or violence in a school's education programs and activities.")  Available at https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf, Last accessed, September 9, 2018.

Title IX covers all programs of a school, and extends to sexual harassment and assault by employees, students and third parties.[25]

195.    Defendant Nassar's actions and conduct were carried out under one of Defendant MSU's programs, which provides medical treatment to students, athletes and to the public.

196.    Defendant Nassar's conduct and actions toward Plaintiff, that being nonconsensual digital vaginal penetration, touching of Plaintiff's genital area and toudch of Plaintiff's buttocks constitutes sex discrimination under Title IX.

197.    As early as the late 1990's and beginning of 2000, an "appropriate person" at Defendant MSU had actual knowledge of sexual assault, abuse and molestation committed by Defendant Nassar.

198.    Specifically, the MSU Defendants were notified about Defendant Nassar's sexual abuse and molestation of other Plaintiffs[26] in 1997-2000 and beyond on more than one occasion.

199.    The MSU Defendants failed to carry out their duties to investigate and take corrective action under Title IX following the complaints of sexual assault, abuse and molestation in or around 1999/2000 time frame.

200.    The MSU Defendants were notified again in 2014 of Defendant Nassar's conduct

---

[25]U.S. Dept. of Ed., Office of Civil Rights, Questions and Answers on Title IX and Sexual Violence, Apr. 29, 2014, at 1, 3, https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf, last accessed September 9, 2018.
[26]*See,* Cases 1:17-cv-00029 and 1:17-cv-00433, ECF No. 1, United States District Court, Western District of Michigan-Southern Division.

when *additional* Plaintiff reported an appointment with Defendant Nassar to address hip pain and was sexually abused and molested by Defendant Nassar when he cupped her buttocks, massaged her breast and vaginal area and he became sexually aroused.[27]

201.    In that complaint, the Plaintiff reported to Defendant MSU facts which were omitted or withheld from the investigative report including but not limited to the following:

    a.  Defendant Nassar was sexually aroused while touching her;

    b.  The appointment with Defendant Nassar did not end until she physically removed his hands from her body.

202.    Three months after initiating an investigation, in July 2014, the victim's complaints were dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Defendant Nassar's conduct "medically appropriate" and "not of a sexual nature."[28]

203.    Following the investigation, upon information and belief, Defendant Nassar became subject to new institutional guidelines, one of which-it is believed-was that Defendant Nassar was not to examine or treat patients alone.[29]

204.    The MSU Defendants failed to adequately supervise or otherwise ensure Defendant Nassar complied with the newly imposed institutional guidelines even though the MSU Defendants had actual knowledge that Defendant Nassar posed a substantial risk of additional sexual abuse of the females whom he had unfettered access, like the Plaintiff in this action.

---

[27] *See,* At MSU:  Assault, harassment and secrecy.  Matt Mencarini, December 15, 2016. Available as http://www.lansingstatejournal.com/story/news/local/2016/12/15/michigan-state-sexual-assault-harassment-larry-nassar/94993582/. Last accessed September 9, 2018.
[28] *Id.*
[29] *Id.*

205.     After the 2014 complaints were received and processed, Defendant Nassar continued to sexually assault, abuse, and molest the Plaintiff in 2015 and 2016.

206.     The MSU Defendants acted with deliberate indifference to known acts of sexual assault, abuse, and molestation on its premises by:

     a.  Failing to investigate and address prior complaints of Plaintiffs:[30]

     b.  Failing to adequately investigate and address the 2014 complaint regarding Defendant Nassar's conduct; and

     c.  Failing to institute corrective measures to prevent Defendant Nassar from violating and sexually abusing other students and individuals, including minors, such as the Plaintiff in this action.

207.     The MSU Defendants acted with deliberate indifference as its lack of response to the allegations of sexual assault, abuse and molestation was clearly unreasonable in light of the known circumstances, Defendant Nassar's actions with female athletes, and his access to young girls and young women.

208.     The MSU Defendants' deliberate indifference was confirmed by the Department of Education's investigation into Defendant MSU's handling of sexual assault and relationship violence allegations which revealed:

     a.  A sexually hostile environment existed and affected numerous students; staff; and 3rd parties on Defendant MSU's campus;

---

[30] *See,* Cases 1:17-cv-00029 and 1:17-cv-00433, ECF No. 1, United States District Court, Western District of Michigan-Southern Division.

b.  That the University's failure to address complaints of sexual harassment,

including sexual violence in a prompt and equitable manner caused and may

have contributed to a continuation of the sexually hostile environment.[31]

209.    The MSU Defendants' responses were clearly unreasonable as Defendant Nassar

continued to sexually assault female athletes and other individuals until he was discharged form

the University in 2016.

210.    Between the dates of approximately the late 1990's to 2016, the MSU Defendants

acted in a deliberate, grossly negligent, and/or reckless manner when they failed to reasonably

respond to Defendant Nassar's sexual assaults and sex-based harassment of prior Plaintiffs on

and off school premises.

211.    The MSU Defendants' failure to promptly and appropriately investigate; remedy;

and respond to the sexual assaults after they received notice subjected prior as well as subsequent

Plaintiffs to further harassment as well as a sexually hostile environment—effectively denying

them all access to educational opportunities at MSU, including medical care.

212.    As a direct and/or proximate result of the MSU Defendants' actions and/or

inactions, Plaintiff has suffered and continues to suffer pain of mind and body, shock, emotional

distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem,

disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be

prevented from performing Plaintiff's daily activities and obtaining full enjoyment of life, and

have sustained and continue to sustain loss of earnings and earning capacity; and have required

---

[31] *See,* Letter from U.S. Department of Education Office for Civil Rights to Michigan State
University, September 1, 2015, OCR Docket #15-11-2098, #15-14-2113.  Available at
https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf.  Last accessed
September 9, 2018.

and will continue to require treatment, therapy, counseling, and hospitalization to address the

mental anguish and despair caused by Defendants' actions.

### B.  COUNT TWO

### SEX DISCRIMINATION UNDER 42 U.S.C. §18116
### (PATIENT PROTECTION AND AFFORDABLE CARE ACT §1557)
### AGAINST THE MSU DEFENDANTS

213.    Plaintiff realleges and incorporates by reference the allegations contained in the

previous paragraphs as if fully restated herein.

214.    Section 1557 of the Patient Protection and Affordable Care Act, which is codified

at 42 U.S.C. §18116, provides that:

> Except as otherwise provided for in this title (or an amendment made by this
> title), an individual shall now, on the ground prohibited under…Title IX of the
> Education Amendments of 1972 (20 U.S.C. 1681, *et. seq.)*…be excluded from
> participation in, be denied the benefits of, or be subjected to discrimination under,
> any health program or activity, any part of which is receiving Federal financial
> assistance, including credits, subsidies, or contracts of insurance, or under any
> program or activity that is administered by an Executive Agency or any entity
> established under this title (or amendments).  The enforcement mechanisms
> provided for and available under…title IX shall apply for purposes of violations
> of this subsection.

215.    Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 *et. seq.*

prohibits sex discrimination in programs that receive Federal financial assistance.

216.    Plaintiff as a female has a right under 42 U.S.C. §18116 to receive health care

services free from discrimination on the basis of sex.

217.    Plaintiff is an "individual" within the meaning of 42 U.S.C. §18116.

218.    Defendant MSU receives Federal financial assistance within the meaning of 42

U.S.C. §18116 because it receives Federal financial assistance such as credits, subsidies, or contracts of insurance.[32]

219.     Defendant MSU and MSU Trustees employed the services of Defendant Nassar, doctors, and other professional and non-professional health care providers who cared for Plaintiff from 2015 to 2016 and held themselves out to the public as competent, careful, and experienced in the care and treatment of patients.

220.     Plaintiff sought medical care from Defendant Nassar at the MSU Sports Medicine Clinic, and other location(s) for a myriad of injuries as identified in Plaintiff's specific allegation(s).

221.     Plaintiff expected to receive medical care for her injuries without being sexually assaulted and without fear of sexual harassment or assault.

222.     Defendant Nassar's conduct and actions toward Plaintiff, that being nonconsensual and assaultive digital vaginal penetration, touching of Plaintiff's vaginal area, and touching of Plaintiff's buttocks constitutes sex discrimination under Title IX and 42 U.S.C. §18116, and otherwise denied each individual Plaintiff the benefits of appropriate medical care.

223.     Defendants MSU and MSU Trustees knew or should have known of Defendant Nassar's abuse yet failed to take corrective action.

224.     Defendants MSU and MSU Trustees are vicariously and/or contractually liable for the actions of its principals, employees, agents, and representatives.

225.     Defendants MSU and MSU Trustees supervised Defendant Nassar and/or were in

---

[32] As long as part of an organization or entity receives Federal funding or subsidies of some sort, the entire organization is subject to the anti-discrimination requirements of Section 1557. *Rumble v Fairview Health Services,* 2015 WL 1197415*12.

a position to take appropriate action upon learning of concerns of misconduct dating back to the late 1990's.

226.     Defendants MSU and MSU Trustees are directly liable for their failure to train, educate, and supervise.

227.     Defendants MSU and MSU Trustees failed to properly train and supervise Defendant Nassar related to his treatment of Plaintiff and with respect to promulgating and enforcing policies and procedures related to patient safety (i.e. use of lgoves; consent; chaperones; etc.).

228.     Because of Defendants inaction and deliberate indifference, Defendants forced Plaintiff to endure unnecessary pain, trauma, humiliation and duress.

229.     Because of Plaintiff's sex, Defendants treated Plaintiff with a lack of care, dignity and respect.

230.     The conduct of Defendants MSU and MSU Trustees described above constitutes sex discrimination against the Plaintiff.

231.     Defendants MSU and MSU Trustees perpetrated this discrimination with malice, deliberate disregard for, or deliberate or reckless indifference to Plaintiff's rights.

232.     The MSU Defendants' failure to promptly and appropriately investigate, respond to, and remedy the sexual assaults after they received repeated notice of Defendant Nassar's wrongdoing for years subjected the Plaintiff and countless others to further sexual harassment and sexual assaults as well as a sexually hostile environment—effectively denying them all access to health programs or activities at MSU, and effectively denying them the benefits of appropriate medical care.

233.     As a direct and/or proximate result of the MSU Defendants' action and/or

35

inactions, Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and

body, shock, emotional distress, physical manifestations of emotional distress, embarrassment,

loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, depression,

sleep disorders, nightmares, psychological injuries, and physical injuries.  Plaintiff was

prevented and will continue to be prevented from performing Plaintiff's daily activities and

obtaining the full enjoyment of life, and have sustained and continue to sustain loss of potential

earning capacity; and have required and will continue to require treatment, therapy, counseling,

and hospitalization to address the mental anguish and despair caused by Defendants' actions.

234.      In the alternative, the action or inaction of the MSU Defendants was deliberately

indifferent or so reckless as to demonstrate a substantial lack of concern for whether an injury

would result to Plaintiff and constitutes gross negligence that is the proximate cause of Plaintiff's

damages.  Plaintiff has suffered and continues to suffer pain and suffering, pain of mind and

body, shock, emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief,

humiliation, loss of enjoyment of life, anxiety, depress, sleep disorders, nightmares,

psychological injuries, and physical injuries.  Plaintiff was prevented and will continue to be

prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life and

have sustained and continue to sustain loss of potential earning capacity and have required and

will continue to require treatment, therapy, counseling, and hospitalization to address the mental

anguish and despair caused by Defendants' actions.

## C.  COUNT THREE

### VIOLATION OF CIVIL RIGHTS 42 U.S.C. §1983
### U.S. CONST., AMEND XIV AGAINST
### THE MSU DEFENDANTS & DEFENDANT NASSAR

235.      Plaintiff realleges and incorporates by reference the allegations contained in the

previous paragraphs as if fully restated herein.

236.    Plaintiff, a female, is a member of a protected class under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

237.    Plaintiff enjoys the constitutionally protected Due Process right to be free from the invasion of bodily integrity through sexual assault, abuse or molestation.

238.    At all relevant times, Defendants MSU, MSU Trustees and Defendant Nassar were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant Michigan State University.

239.    The acts as alleged above amount to a violation of these clearly established constitutionally protected rights, of which reasonable persons in the MSU Defendants' positions should have known.

240.    The MSU Defendants have the ultimate responsibility and authority to train and supervise its employees, agents, and/or representatives, in the appropriate manner of detecting, reporting, and preventing sexual abuse, assault, and molestation and as a matter of acts, custom, policy, and/or practice, failed to do so with deliberate indifference.

241.    As a matter of custom, policy, and/or practice, the MSU Defendants had and have the ultimate responsibility and authority to investigate complaints against their employees, agents, and representatives from all individuals including, but not limited to students, visitors, faculty, staff, or other employees, agents and/or representatives, and failed to do with deliberate indifference.

242.    At all relevant times, Defendant Nassar's supervisors acted in a supervisory role to Defendant Nassar through their roles at Defendant MSU's Sports Medicine Clinic, MSU's College of Osteopathic Medicine, and other affiliated MSU departments or institutions.

243.     At all relevant times, one of Defendant Nassar's supervisors was the head coach of the MSU Women's Gymnastics Team (or acted in a supervisory role to Defendant Nassar) while acting as team physician to the MSU Women's Gymnastics Team.

244.     As a matter of custom, policy and/or practice, the head coach of the MSU Women's Gymnastics Team has the ultimate responsibility and authority to investigate complaints from the athletes that involved allegations of impropriety or sexual assault by the team physician (here Defendant Nassar).

245.     As a matter of custom, policy and/or practice, Defendant Nassar's supervisors had and have the ultimate responsibility and authority to investigate complaints against their employees, agents, and representatives from all individuals including, but not limited to students, patients, visitors, faculty, staff, or other employees, agents and/or representatives, and failed to do so with deliberate indifference.

246.     MSU Defendants actions in assisting to exonerate Defendant Nassar from wrongdoing in response to the 2014 Title IX investigation, including statements intentionally made to discourage complainants from further pursuing action against Defendant Nassar and the inhibition of the law enforcement investigation in which a denial of any prior complaints about Defendant Nassar demonstrate the existence of an agreement or conspiracy between Defendant Nassar and Defendant Nassar's then-supervisors to deprive Plaintiff of her constitutional rights.

247.     Defendant Nassar's supervisors and Defendant Nassar had a duty to prevent sexual assault, abuse and molestation of Defendant MSU's patients, athletes, and other members of the public who utilize Defendant MSU's resources, those duties arising under the above-referenced constitutional rights.

248.     The MSU Defendants had a duty to prevent sexual assault, abuse, and molestation

38

on their campus and premises, that duty arising under the above referenced constitutional rights, as well as established rights pursuant to Title IX.

249.     Defendant MSU's internal policies provide that"[a]ll University employees…are expected to promptly report sexual misconduct or relationship violence that they observe or learn about and that involves a member of the University community (faculty, staff or student) or occurred at a University event or on University property." They state further: "[t]he employee must report all relevant details about the alleged relationship violence or sexual misconduct that occurred on campus or a campus-sponsored event…"

250.     Defendant Nassar's supervisors violated the aforementioned internal policies in or around 1997 when athletes told Defendant Nassar's supervisors that they had been sexually assaulted by Defendant Nassar and the supervisors refused to report the incident and instead intimidated, humiliated, and embarrassed the athletes.

251.     Defendant Nassar's supervisor's violation of the policy by refusing to take any action in response to legitimate and credible claims of sexual assault, resulted in continued violations of constitutional rights which eventually violated Plaintiff's constitutional rights, including Due Process right to bodily integrity, which includes the right to be free from sexual assaults.

252.     Defendant Nassar's supervisor's actions as alleged above also demonstrate the existence of an agreement or conspiracy between Defendant Nassar and his supervisors to deprive other named Plaintiffs (in other cases filed) as well as this Plaintiff of her constitutional rights.

253.     Defendant MSU's aforementioned internal policies were violated in or around

1999 when a prior reported sexual assault, abuse and molestation by Defendant Nassar to MSU representatives (including employees such as coaches and trainers) and no action was taken to address the complaints.

254.    Defendant MSU's aforementioned internal policies were violated beginning in 2000 when a report of sexual assault, abuse and molestation by Defendant Nassar to MSU representatives (including trainers) and no action was taken to address the complaints.

255.    The MSU Defendants' failure to address the above stated complaints led to an unknown number of individuals being victimized, sexually assaulted, abused, and molested by Defendant Nassar, *which included the Plaintiff.*

256.    Defendant MSU's aforementioned internal policies were also violated in or around 2001/2002 when a report of sexual assault, abuse and molestation by Defendant Nassar and was relayed to other Defendant MSU representatives (including trainers) with no subsequent action being taken to address the complaints.

257.    Additionally, the MSU Defendant's failure to properly address the 2014 complaint regarding Defendant Nassar's conduct also led to others being victimized, sexually assaulted, abused and molested by Defendant Nassar, *which included the Plaintiff.*

258.    At all relevant times, Defendant MSU had a policy requiring MSU employees to immediately report suspected child abuse, sexual assault and child pornography.[33]

259.    Defendant Nassar's supervisor (at the time) violated this policy in or around 1997.

---

[33] *See,* President Lou Anna K. Simon reminds Michigan State employees of obligation to report sexual assault, Brandon Howell, August 17, 2012, available at, http://www.mlive.com/lansing-news/index.ssf/2012/08/president_lou_anna_k_simon_rem.html, last accessed September 9, 2018 ("Simon writes in the e-mail…'I write to remind University employees about the reporting protocols for suspected child abuse, child pornography, and allegations of sexual assault.' Jason Cody, a spokesperson for the university said the protocols outlined in Simon's email 'long have been in place for employees.').

260.    Defendant Nassar's supervisor (at the time) violated this policy in or around 2000.

261.    Defendant Nassar's supervisor (at the time) violated this policy in or around 2004.

262.    Ultimately, Defendants failed to adequately and properly investigate the complaints of numerous Plaintiffs[34] or other similarly-situated individuals including but not limited to failing to:

  a.  Perform a thorough investigation into improper conduct by Defendant Nassar with prior Plaintiffs after receiving their complaints in 1999 and 2000;

  b.  Thoroughly review and investigate all policies, practices, procedures and training materials related to the circumstances surrounding the conduct of Defendant Nassar;

  c.  Recognize sexual assault when reported in 2014 and permitting University officials to deem sexual assault as "medically appropriate" and "not of a sexual nature;" and,

  d.  Ensure all institutional guidelines issued following the 2014 investigation into Defendant Nassar's conduct were satisfied.

263.    As indicated in the U.S. Department of Education Office of Civil Rights report,[35] the MSU Defendants had a culture that permitted a sexually hostile environment to exist affecting numerous individuals on Defendant MSU's campus, including Plaintiff, a patient that seen, examined and treated by Defendant Nassar at his MSU office location.

---

[34] *See,* Cases 1:17-cv-00029 and 1:17-cv-00433, ECF No. 1, United States District Court, Western District of Michigan-Southern Division.
[35] *See,* Letter from U.S. Department of Education Office for Civil Rights to Michigan State University, September 1, 2015, OCR Docket #15-11-2098, #15-14-2113.  Available at https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf.  Last accessed September 9, 2018.

264.     By failing to prevent the aforementioned sexual assault, abuse and molestation of prior Plaintiffs and by failing to appropriately respond to reports of Defendant Nassar's sexual assault, abuse and molestation in a manner that was so clearly unreasonable it amounted to deliberate indifference, the MSU Defendants are liable to Plaintiff pursuant to 42 U.S.C. §1983.

265.     The MSU Defendants are also liable to Plaintiff under 42 U.S.C. §1983 for maintaining customs, policies, and practices which deprived Plaintiff of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. §1983.

266.     The MSU Defendants tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline Defendant Nassar, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiff with impunity.

267.     As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or future earning capacity.

D.  **COUNT FOUR**

**FAILURE TO TRAIN AND SUPERVISE
42 U.S.C. §1983 AGAINST THE MSU DEFENDANTS**

268.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

269.     The MSU Defendants have the ultimate responsibility and authority to train and

supervise its employees, agents, and/or representatives including Defendant Nassar and all
faculty and staff regarding their duties toward students, faculty, staff and visitors.

270.    The MSU Defendants failed to train and supervise its employees, agents, and/or
representatives including all faculty and staff, regarding the following duties:

a.   Perceive, report, and stop inappropriate sexual conduct on campus;

b.   Provide diligent supervision over student-athletes and other individuals;

c.   Report suspected incidents of sexual abuse or sexual assault;

d.   Ensure the safety of all students, faculty, staff, and visitors to Defendant
MSU's campuses premises;

e.   Provide a safe environment for all students, faculty, staff, and visitors to
Defendant MSU's premises free from sexual harassment; and,

f.   Properly train faculty and staff to be aware of their individual responsibility
for creating and maintaining a safe environment.

271.    The above list of duties is not exhaustive.

272.    The MSU Defendants failed to adequately train coaches, trainers, medical staff,
and others regarding the aforementioned duties which led to violations of Plaintiff's rights.

273.    As a result, the MSU Defendants deprived Plaintiff of rights secured by the
Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. §1983.

274.    As a direct and/or proximate result of Defendants' actions and/or inactions,
Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-
esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will
continue to be prevented from performing Plaintiff's daily activities and obtaining the full

enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or future earning capacity.

### E.  COUNT FIVE

#### GROSS NEGLIGENCE
#### AGAINST MSU DEFENDANTS AND DEFENDANT NASSAR

275.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

276.    The MSU Defendants owed Plaintiff a duty to use due care to ensure her safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents, including Defendant Nassar.

277.    Defendant Nassar owed Plaintiff a duty of due care in carrying out medical treatment as an employee, agent and/or representative of the MSU Defendants.

278.    By seeking medical treatment from Defendant Nassar in the course of his employment, agency and/or representation of the MSU Defendants, a special, confidential, and fiduciary relationship between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use due care.

279.    The MSU Defendants' failure to adequately supervise Defendant Nassar, especially after MSU knew or should have known of complaints regarding his nonconsensual sexual touching and assaults during "treatments" was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to the Plaintiff.

280.    Defendant Nassar's conduct in sexually assaulting, abusing and molesting Plaintiff in the course of his employment, agency and/or representation of the MSU Defendants and under the guise of rendering "medical treatment" was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to the Plaintiff.

44

281.     The MSU Defendants' conduct demonstrated a willful disregard for precautions to ensure Plaintiff's safety.

282.     The MSU Defendants' conduct as described above, demonstrated a willful disregard for substantial risks to the Plaintiff.

283.     The MSU Defendants breached duties owed to the Plaintiff and were grossly negligent when they conducted themselves by the actions described above, said acts having been committed with reckless disregard for Plaintiff's health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

284.     As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or future earning capacity.

### F.  COUNT SIX

### NEGLIGENCE AGAINST THE MSU DEFENDANTS AND DEFENDANT NASSAR

285.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

286.     The MSU Defendants owed Plaintiff a duty of ordinary care to ensure her safety and freedom from sexual assault, abuse, molestation while interacting with their employees, representatives, and/or agents.

287.     By seeking medical treatment from Defendant Nassar in his capacity as an

employee, agent, and/or representative of the MSU Defendants, a special, confidential, and fiduciary relationship between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use ordinary care.

288.    Defendant Nassar owed Plaintiffs a duty of ordinary care.

289.    The MSU Defendants' failure to adequately train and supervise Defendant Nassar breached the duty of ordinary care.

290.    The MSU Defendants had notice through its own employees, agents, and/or representatives as early as 1999, again in 2000 and again in 2014 of complaints of a sexual nature related to Defendant Nassar's purported "treatments" with young girls and women.

291.    The MSU Defendants should have known of the foreseeability of sexual abuse with respect to youth and collegiate sports.

292.    The MSU Defendants' failure to properly investigate, address, and remedy complaints regarding Defendant Nassar's conduct was a breach of ordinary care.

293.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff in the course of his employment, agency, and/or representation of the MSU Defendants was a breach of the duty to use ordinary care.

294.    As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or future earning capacity.

G.  **COUNT SEVEN**

**VICARIOUS LIABILITY AGAINST THE MSU DEENDANTS**

295.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

296.     Vicarious liability is indirect responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do so.

297.     Vicarious liability essentially creates agency between the principal and its agent, so that the principal is held to have done what the agent has done.

298.     The MSU Defendants employed and/or held Defendant Nassar out to be its agent and/or representative from approximately 1996 to sometime in 2016.

299.     Defendant MSU's website contains hundred of pages portraying Defendant Nassar as a distinguished member of Defendant MSU's College of Osteopathic Medicine, Division of Sports Medicine.[36]

300.     The MSU Defendants are vicariously liable for the actions of Defendant Nassar as described above that were performed during the course and scope of his employment, representation, and/or agency with the MSU Defendants and while he had unfettered access to young female athletes on MSU's campus and premises through its College of Osteopathic Medicine and Division of Sports Medicine.

301.     As a direct and/or proximate result of Defendants' actions and/or inactions,

---

[36] As of September 9, 2018, using the search term "Nassar" at www.msu.edu returns 1,590 results, the majority of which include references to Defendant Nassar dating as far back as 1997.

Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or future earning capacity.

**H.  COUNT EIGHT**

**EXPRESS/IMPLIED AGENCY AGAINST MSU DEFENDANTS**

302.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

303.    An agent is a person who is authorized by another to act on its behalf.

304.    The MSU Defendants intentionally or negligently made representations that Defendant Nassar was their employee, agent, and/or representative.

305.    On the basis of those representations, Plaintiff reasonably believed that Defendant Nassar was acting as an employee, agent, and/or representative of the MSU Defendants.

306.    Plaintiff was injured as a result of Defendant Nassar's sexual assault, abuse and molestation as described above, acts that were performed during the scope and course of his employment, agency, and/or representation with the MSU Defendants and while he had unfettered access to young female athletes.

307.    Plaintiff was injured because she relied on MSU Defendants to provide employees, agents, and/or representatives who would exercise reasonable skill and care.

308.    As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will

continue to be prevented from performing Plaintiff's daily activities and obtaining the full
enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or
future earning capacity.

## I.   COUNT NINE

### NEGLIGENT SUPERVISION AGAINST THE MSU DEFENDANTS

309.     Plaintiff realleges and incorporates by reference the allegations contained in the
previous paragraphs as if fully restated herein.

310.     The MSU Defendants had a duty to provide reasonable supervision of their
employee, agent, and/or representative, Defendant Nassar, while he was in the scope and course
of his employment, agency or representation with the MSU Defendants and while he interacted
with young female athletes including the Plaintiff.

311.     It was reasonably foreseeable given the known sexual abuse in youth sports, and
gymnastics in particular, that Defendant Nassar who had prior allegations against him had or
would sexually abuse children, including the Plaintiff, unless properly supervised.

312.     The MSU Defendants by and through their employees, agents, managers, and/or
assigns, knew or reasonably should have known of Defendant Nassar's conduct and/or that
Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual
interest in children.

313.     The MSU Defendants breached their duty to provide reasonable supervision of
Defendant Nassar, and permitted Defendant Nassar, who was in a position of trust and authority,
to commit the acts against the Plaintiff.

314.     The aforementioned sexual abuse occurred while Plaintiff and Defendant Nassar

were on the premises of Defendant MSU, and/or while Defendant Nassar was acting in the course of his employment, agency and/or representation of the MSU Defendants.

315.　　　The MSU Defendants tolerated, authorized and/or permitted a custom, policy, practice of procedure of insufficient supervision and failed to adequately screen, counsel, or discipline such individuals, with the result that Defendant Nassar was allowed to violate the rights of persons such as the Plaintiff with impunity.

316.　　　As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or future earning capacity.

**J.　COUNT TEN**

**NEGLIGENT FAILURE TO WARN OR PROTECT AGAINST MSU DEFENDANTS**

317.　　　Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

318.　　　The MSU Defendants knew or should have known that Defendant Nassar posed a risk of harm to the Plaintiff or those in Plaintiff's situation.

319.　　　As early as 1999, the MSU Defendants had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

320.　　　The MSU Defendants knew or should have known that Defendant Nassar

committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

321.    The MSU Defendants had a duty to warn or protect the Plaintiff and others in Plaintiff's situation against the risk of injury by Defendant Nassar.

322.    The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar as an employee, agent, and/or representative of the MSU Defendants and the Plaintiff.

323.    The MSU Defendants breached said duty by failing to warn Plaintiff and/or by failing to take reasonable steps to protect the Plaintiff from Defendant Nassar.

324.    The MSU Defendants breached its duties to protect Plaintiff by failing to:

    a.   Respond to allegations of sexual assault, abuse, and molestation;

    b.   Detect and/or uncover evidence of sexual assault, abuse, and molestation; and,

    c.   Investigate, adjudicate, and terminate Defendant Nassar's employment with Defendant MSU prior to 2016.

325.    The MSU Defendants failed to adequately screen, counsel and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician at an educational institution, resulting in violations of Plaintiff's rights.

326.    The MSU Defendants willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect the Plaintiff form Defendant Nassar's conduct.

327.    As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will

continue to be prevented from performing Plaintiff's daily activities and obtaining the full

enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or

future earning capacity.

### K.  COUNT ELEVEN

### NEGLIGENT FAILURE TO TRAIN OR EDUCATE
### AGAINST THE MSU DEFENDANTS

328.    Plaintiff realleges and incorporates by reference the allegations contained in the

previous paragraphs as if fully restated herein.

329.    The MSU Defendants breached their duty to take reasonable protective measures

to protect the Plaintiff and other minors from risk of childhood sexual abuse and/or sexual

assault by Defendant Nassar, such as the failure to properly train or educate the Plaintiff and

other individuals (including minors) about how to avoid such a risk.

330.    The MSU Defendants failed to implement reasonable safeguards to:

    a.  Prevent acts of sexual assault, abuse, and molestation by Defendant Nassar;

    b.  Avoid placing Defendant Nassar in positions where he would be in

       unsupervised contact and interaction with Plaintiff and other young athletes.

331.    As a direct and/or proximate result of MSU Defendants' negligent failure to train

or educate, Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body,

loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and

will continue to be prevented from performing Plaintiff's daily activities and obtaining the full

enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or

future earning capacity.

### L.  COUNT TWELVE

### NEGLIGENT RETENTION AGAINST THE MSU DEFENDANTS

332.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

333.     The MSU Defendants had a duty when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents and/or representatives to exercise due care, but they failed to do so.

334.     The MSU Defendants were negligent in the retention of Defendant Nassar as an employee, agent, and/or representative in their failure to adequately investigate, report and address complaints about his conduct of which they knew or should have known.

335.     The MSU Defendants were negligent in the retention of Defendant Nassar as an employee, agent, and/or representative when after they discovered, or reasonably should have discovered Defendant Nassar's conduct which reflected a propensity for sexual misconduct.

336.     The MSU Defendants' failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to and sexually abusing and/or sexually assaulting the Plaintiff and an unknown number of other individuals.

337.     The aforementioned negligence in the credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Nassar created a foreseeable risk of harm to the Plaintiff as well as other minors and young adults.

338.     As a direct and/or proximate result of Defendants' negligent retention, Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or future earning capacity.

## M. COUNT THIRTEEN

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### AGAINST THE MSU DEFENDANTS

339.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

340.    The MSU Defendants allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults.

341.    A reasonable person would not expect the MSU Defendants to tolerate or permit their employee or agent to carry out sexual assault, abuse, or molestation after they knew or should have known of complaints and claims of sexual assault and abuse occurring during Defendant Nassar's "treatments."

342.    The MSU Defendants held Defendant Nassar in high esteem and acclaim which in turn encouraged the Plaintiff and others to respect and trust Defendant Nassar and seek out his services and to not question his methods or motives.

343.    The MSU Defendants protected Defendant Nassar in part to bolster and sustain his national and international reputation in the gymnastics community.

344.    A reasonable person not expect the MSU Defendants to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse, and molestation.

345.    The MSU Defendants' conduct as described above was intentional and/or reckless.

346.    As a direct and/or proximate result of MSU Defendants' conduct, Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be

prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life and

have sustained and continue to sustain loss of potential earnings and/or future earning capacity;

and have required and will continue to require treatment, therapy, counseling, and hospitalization

(if needed in future) to address the mental anguish and despair caused by Defendants' actions.

### N.  COUNT FOURTEEN

### FRAUD AND MISREPRESENTATION AGAINST MSU DEFENDANTS

347.    Plaintiff realleges and incorporates by reference the allegations contained in the

previous paragraphs as if fully restated herein.

348.    From approximately 1996 to September 2016, the MSU Defendants represented

to the Plaintiff (and additional Plaintiffs who have filed actions similar to this action) and the

public that Defendant Nassar was a competent and safe physician.

349.    By representing that Defendant Nassar was a team physician and athletic

physician at Defendant MSU and a National Team Physician with Defendant USAG, the MSU

Defendants represented to Plaintiff and the public that Defendant Nassar was safe, trustworthy,

of high moral and ethical repute, and that Plaintiffs and the public need not worry about being

harmed by Defendant Nassar.

350.    The representations were false when they were made as Defendant Nassar had an

was continuing to sexually assault, abuse, and molest the Plaintiff and an unknown number of

other individuals.

351.    As of 1999 and 2000, the MSU Defendants knew their representation of

Defendant Nassar were false as at least prior Plaintiffs alleged and had complained of Defendant Nassar's conduct to MSU representatives.[37]

352.    Although MSU was informed of Defendant Nassar's conduct they failed to investigate, remedy, or in any way address prior Plaintiffs complaints.[38]

353.    The MSU Defendants continued to hold Defendant Nassar out as a competent and safe physician, even after receiving numerous complaints.

354.    Additional complaints against Defendant Nassar surfaced in 2014, however, because of Defendant MSU's culture which included existence of a sexually hostile environment on Defendant MSU's campus and premises and the University's failure to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner which in turn caused and may have contributed to a continuation of the sexually hostile environment, Defendant Nasser was permitted to continue employment and sexually abuse, assault and molest Plaintiff and an unknown number of other individuals.[39]

355.    Between the time of the 2014 complaint and September 2016, the MSU Defendants continued to hold Defendant Nassar out as a competent and safe physician.

356.    Plaintiff relied on the assertions of the MSU Defendants and upon information and belief, several Plaintiffs even continued to seek treatment from Defendant Nassar in the wake of known concerns and dangers.

---

[37] *See,* Cases 1:17-cv-00029 and 1:17-cv-00433, ECF No. 1, United States District Court, Western District of Michigan-Southern Division.
[38] *See,* Cases 1:17-cv-00029 and 1:17-cv-00433, ECF No. 1, United States District Court, Western District of Michigan-Southern Division.

[39] *See,* Letter from U.S. Department of Education Office for Civil Rights to Michigan State University, September 1, 2015, OCR Docket #15-11-2098, #15-14-2113.  Available at https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf.  Last accessed September 9, 2018.

357.     Plaintiff was subjected to sexual assault, abuse and molestation as a result of the MSU Defendants' fraudulent misrepresentations regarding Defendant Nassar.

358.     As a direct and/or proximate result of MSU Defendants' fraudulent misrepresentations, Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or future earning capacity; and have required and will continue to require treatment, therapy, counseling, and hospitalization (if needed in future) to address the mental anguish and despair caused by Defendants' actions.

## VI.    CLAIMS AGAINST TWISTARS

### O.  COUNT FIFTEEN

### GROSS NEGLIGENCE AGAINST DEFENDANT TWISTARS

359.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

360.     Defendant Twistars owed Plaintiff a duty to use due care to ensure her safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents, including Defendant Nassar.

361.     Defendant Nassar owed Plaintiff a duty of due care in carrying out medical treatment as an employee, agent and/or representative of the Defendant Twistars.

362.     By seeking medical treatment from Defendant Nassar in the course of his

employment, agency and/or representation of the Defendant Twistars, a special, confidential, and fiduciary relationship between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use due care.

363.    Given known sexual abuse which has taken place in youth sports including gymnastics and the reasonable foreseeability that harm may not occur to athletes, Defendant Twistars not only referred athletes to Defendant Nassar but also failed to adequately supervise Defendant Nassar. Defendant Twistars' action were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

364.    Defendant Nassar's conduct in sexually assaulting, abusing and molesting Plaintiff in the course of his employment, agency and/or representation of Defendant Twistars and under the guise of rendering medical "treatment" was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to the Plaintiff.

365.    Defendant Twistars' conduct demonstrated a willful disregard for precautions to ensure Plaintiff's safety.

366.    Defendant Twistars' conduct as described above, demonstrated a willful disregard for substantial risks to the Plaintiff.

367.    Defendant Twistars' breached duties owed to the Plaintiff and were grossly negligent when they conducted themselves by the actions described above, said acts having been committed with reckless disregard for Plaintiff's health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

As a direct and/or proximate result of Defendant Twistars' actions and/or inactions, Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be

prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or future earning capacity; and have required and will continue to require treatment, therapy, counseling, and hospitalization (if needed in future) to address the mental anguish and despair caused by Defendants' actions.

### P.  COUNT SIXTEEN

### NEGLIGENCE AGAINST THE DEFENDANT TWISTARS

368.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

369.    In or around 1997, a parent of a gymnast at Defendant Twistars' facility complained to Mr. Geddert, the owner and operator of Defendant Twistars, regarding Dr. Nassar's conduct alleging sexual abuse, assault, and molestation.

370.    Despite being informed of Defendant Nassar's conduct, Mr. Geddert recommended Defendant Nassar as a physician to members and guests of Defendant Twistars.

371.    Mr. Geddert owed Plaintiff a duty of ordinary care to ensure her safety and freedom from sexual assault, abuse and molestation.

372.    In recommending Defendant Nassar with knowledge of Defendant Nassar's conduct, Mr. Geddert breached the duty of ordinary care to Plaintiff and the public.

373.    Defendant Twistars breached the duty of ordinary care to Plaintiff and the public in failing to report the 1997 allegations which were made to Mr. Geddert.

374.    Defendant Twistars breached the duty of ordinary care to Plaintiff and the public by failing to report the 1997 allegations, which were made to Mr. Geddert, to law enforcement.

375.    Plaintiff, as a member of Twistars and in taking the recommendation of Mr.

Geddert to seek medical treatment form Defendant Nassar had a reasonable expectation that Defendant Nassar would carry out medical treatment without subjecting them to sexual assault, abuse or molestation.

376.    By seeking medical treatment from Defendant Nassar, a special, confidential, and fiduciary relationship between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use ordinary care.

377.    Defendant Nassar owed Plaintiff a duty of ordinary care in carrying out medical treatment at Defendant Twistars facilities.

378.    Defendant Twistars' failure to adequately train and supervise Defendant Nassar while he was at their facility breached the duty of ordinary care.

379.    Defendant Nassar's conduct at Defendant Twistars' facility, in sexually assaulting, abusing, and molesting Plaintiff in the course of and under the guise of rendering medical "treatment" was a breach of the duty to use ordinary care.

380.    As a direct and/or proximate result of Defendant Twistars' actions and/or inactions, the Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or future earning capacity; and have required and will continue to require treatment, therapy, counseling, and hospitalization (if needed in future) to address the mental anguish and despair caused by Defendants actions

### Q.  COUNT SEVENTEEN

### EXPRESS/IMPLIED AGENCY AGAINST DEFENDANT TWISTARS

381.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

382.     An agent is a person who is authorized by another to act on its behalf.

383.     The Defendant Twistras intentionally or negligently made representations that Defendant Nassar was their employee, agent, and/or representative.

384.     On the basis of those representations, Plaintiff reasonably believed that Defendant Nassar was acting as an employee, agent, and/or representative of the Defendant Twistars.

385.     Plaintiff was injured as a result of Defendant Nassar's sexual assault, abuse and molestation as described above, acts that were performed during the scope and course of his employment, agency, and/or representation with the Defendant Twistars and while he had unfettered access to young female athletes.

386.     Plaintiff was injured because she relied on Defendant Twistars to provide employees, agents, and/or representatives who would exercise reasonable skill and care.

387.     As a direct and/or proximate result of Defendant Nassar's negligence carried out through his employment, agency, and or representation of Defendant Twistars Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or future earning capacity.

### R.  COUNT EIGHTEEN

### NEGLIGENT SUPERVISION AGAINST DEFENDANT TWISTARS

388.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

389.     Defendant Twistars had a duty to provide reasonable supervision of its employee, agent, and/or representative, Defendant Nassar, while he was in the scope and course of his employment, agency or representation with the MSU Defendants and while he interacted with young female athletes, including the Plaintiff.

390.     It was reasonably foreseeable given the known sexual abuse in youth sports, and gymnastics in particular, that Defendant Nassar who had prior allegations against him had or would sexually abuse children, including the Plaintiff, unless properly supervised.

391.     Defendant Twistars by and through their employees, agents, managers, and/or assigns, knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children and young adults and due to the 1997 complaint made to Mr. Geddert of the nonconsensual sexual touching during "treatment."

392.     Defendant Twistars breached their duty to provide reasonable supervision of Defendant Nassar, and permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against the Plaintiff.

393.     The aforementioned sexual abuse occurred while Plaintiff and Defendant Nassar were on the premises of Defendant MSU, and/or while Defendant Nassar was acting in the course of his employment, agency and/or representation of the Defendant Twistars.

394.     Defendant Twistars tolerated, authorized and/or permitted a custom, policy, practice of procedure of insufficient supervision and failed to adequately screen, counsel, or discipline such individuals, with the result that Defendant Nassar was allowed to violate the rights of persons such as the Plaintiff with impunity.

395.     As a direct and/or proximate result of Defendant Twistars' negligent supervision,

Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or future earning capacity.

### S.  COUNT NINETEEN

### NEGLIGENT FAILURE TO WARN
### OR PROTECT AGAINST DEFENDANT TWISTARS

396.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

397.     Defendant Twistars knew or should have known that Defendant Nassar posed a risk of harm to the Plaintiff or those in Plaintiff's situation.

398.     As early as 1997, the Defendant Twistars, by a complaint made to its owner/employee/agent/representative John Geddert, had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

399.     Defendant Twistars knew or should have known that Defendant Nassar committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

400.     Defendant Twistars had a duty to warn or protect the Plaintiff and others in Plaintiff's situation against the risk of injury by Defendant Nassar.

401.     The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar an agent/representative/employee of Defendant Twistars and the Plaintiff.

402.     Defendant Twistars breached said duty by failing to warn Plaintiff and/or by failing to take reasonable steps to protect the Plaintiff from Defendant Nassar.

403.     Defendant Twistars breached its duties to protect Plaintiff by failing to detect and/or uncover evidence of sexual assault, abuse, and molestation; which was taking place on its premises and at its facility.

404.     Defendant Twistars breached its duties to protect Plaintiff by failing to investigate Defendant Nassar, adjudicate, and suspend and/or ban Defendant Nassar from Twistar sanctioned events.

405.     Defendant Twistars failed to adequately screen, counsel and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician at an educational institution, resulting in violations of Plaintiff's rights.

406.     Defendant Twistars willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect the Plaintiff form Defendant Nassar's conduct.

407.     As a direct and/or proximate result of Defendant Twistars negligent failure to warn or protect, Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or future earning capacity; was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or future earning capacity.

T.  **COUNT TWENTY**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
AGAINST DEFENDANT TWISTARS**

408.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

409.    Defendant Twistars allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults at its facility and other places.

410.    A reasonable person would not expect the Defendant Twistars to tolerate or permit their employee or agent to carry out sexual assault, abuse, or molestation.

411.    Defendant Twistars held Defendant Nassar in high esteem and acclaim which in turn encouraged the Plaintiff and others to respect and trust Defendant Nassar and seek out his services and to not question his methods or motives.

412.    Defendant Twistars protected Defendant Nassar in part to bolster and sustain his national and international reputation in the gymnastics community, and Twistars reputation in the gymnastics community.

413.    A reasonable person would not expect Defendant Twistars to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse, and molestation on their premises or in their facility.

414.    Defendant Twistars' conduct as described above was intentional and/or reckless. As a direct and/or proximate result of Defendant Twistars' conduct, the Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or future earning capacity; and

have required and will continue to require treatment, therapy, counseling, and hospitalization (if

needed in future) to address the mental anguish and despair caused by Defendants' actions; was

prevented and will continue to be prevented from performing Plaintiff's daily activities and

obtaining the full enjoyment of life and have sustained and continue to sustain loss of potential

earnings and/or future earning capacity.

U.  **COUNT TWENTY-ONE**

**FRAUD AND MISREPRESENTATION AGAINST DEFENDANT TWISTARS**

415.    Plaintiff realleges and incorporates by reference the allegations contained in the

previous paragraphs as if fully restated herein.

416.    From approximately 1996 to September 2016, Defendant Twistars represented

to the Plaintiff (and additional Plaintiffs who have filed actions similar to this action) and the

public that Defendant Nassar was a competent and safe physician.

417.    By representing that Defendant Nassar was a team physician and athletic

physician at Defendant MSU and a National Team Physician with Defendant USAG, Defendant

Twistars represented to Plaintiff and the public that Defendant Nassar was safe, trustworthy, of

high moral and ethical repute, and that Plaintiffs and the public need not worry about being

harmed by Defendant Nassar.

418.    The representations were false when they were made as Defendant Nassar had an

was continuing to sexually assault, abuse, and molest the Plaintiff and an unknown number of

other individuals at Defendant Twistars' facility.

419.    As early as 1997, Defendant Twistars knew their representations of Defendant

Nassar were false as Defendant Twistars received a complaint of Defendant Nassar's conduct.

420.    Plaintiff relied on the assertions of Defendant Twistars and several Plaintiffs

continued to seek treatment of Defendant Nassar in the wake of known concern and dangers.

421.    Plaintiff was subjected to sexual assault, abuse, and molestation as a result of Defendant Twistars' fraudulent misrepresentations regarding Defendant Nassar.

422.    As a direct and/or proximate result of Defendant Twistars' fraudulent misrepresentations, Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or future earning capacity; and have required and will continue to require treatment, therapy, counseling, and hospitalization (if needed in future) to address the mental anguish and despair caused by Defendants' actions.

## VII.   CLAIMS AGAINST USAG

423.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

424.    Defendant USAG owed Plaintiff a duty to use due care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents.

425.    The Plaintiff will be referenced as the "USAG Plaintiff."

## V.   <u>COUNT TWENTY-TWO</u>

## <u>GROSS NEGLIGENCE AGAINST DEFENDANT USAG AND DEFENDANT NASSAR</u>

426.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

427.    Defendant USAG owed the USAG Plaintiff a duty to use due care to ensure her

safety and freedom from sexual assault, abuse, and molestation while interacting with their

employees, representatives, and/or agents, including Defendant Nassar.

428.    The Plaintiff is (and was) a member of USAG, participated in USAG sanctioned

events, and were knowledgeable of and in some cases referred to Defendant Nassar through

USAG affiliations.

429.    Defendant Nassar owed the USAG Plaintiff a duty to use due care in his capacity

as an employee, agent and/or representative of Defendant USAG.

430.    By seeking medical treatment from Defendant Nassar in his capacity as an

employee, agent and/or representative of Defendant USAG, a special, confidential, and fiduciary

relationship between the USAG Plaintiff and Defendant Nassar was created, resulting in

Defendant Nassar owing Plaintiff a duty to use due care.

431.    Defendant USAG's failure to adequately supervise Defendant Nassar was so

reckless as to demonstrate a substantial lack of concern for whether an injury would result to the

USAG Plaintiff.

432.    Defendant Nassar's conduct in sexually assaulting, abusing and molesting

Plaintiff under the guise of rendering medical "treatment" as an employee, representative, and/or

agent of Defendant USAG was so reckless as to demonstrate a substantial lack of concern for

whether an injury would result to the USAG Plaintiff.

433.    Defendant USAG's conduct demonstrated a willful disregard for necessary

precautions to reasonably protect the USAG Plaintiff's safety.

434.    Defendant USAG's conduct as described above, demonstrated a willful disregard

for substantial risks to the USAG Plaintiff.

435.    Defendant USAG breached its duties owed to the USAG Plaintiff and was grossly

negligent when they conducted themselves by the actions described above, including but not limited to their failure to notify MSU about the reasons for Nassar's separation for USAG and more broadly the issues surrounding sexual abuse in gymnastics and warning signs and reporting requirements.  Said acts were committed with reckless disregard for the USAG Plaintiff's health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

436.    As a direct and/or proximate result of Defendant USAG'S actions and/or inactions, the USAG Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or future earning capacity; and have required and will continue to require treatment, therapy, counseling, and hospitalization (if needed in future) to address the mental anguish and despair caused by Defendants actions.

### W. **COUNT TWENTY-THREE**

### **NEGLIGENCE AGAINST DEFENDANT USAG AND DEFENDANT NASSAR**

437.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

438.    Defendant USAG owed the USAG Plaintiff a duty of ordinary care to ensure her safety and freedom from sexual assault, abuse, molestation while interacting with their employees, representatives, and/or agents.

439.    The USAG Plaintiff as a member of Defendant USAG had a reasonable

expectation that Defendant USAG was recommending competent and ethical physicians and trainers for medical treatment who would carry out said treatment without sexual assault, abuse and molestation.

440.    By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of Defendant USAG, a special, confidential, and fiduciary relationship between the USAG Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use ordinary care.

441.    Defendant Nassar owed USAG Plaintiff a duty of ordinary care in carrying out medical treatment.

442.    Defendant USAG's failure to adequately train and supervise Defendant Nassar breached the duty of ordinary care.

443.    Defendant USAG's failure to properly investigate, address, and remedy complaints regarding Defendant Nassar's conduct was a breach of ordinary care.

444.    Defendant USAG's failure to inform the USAG Plaintiff and the public of the allegations and concerns leading to Defendant Nassar's separation from USAG was a breach of ordinary care.

445.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff in the course of his employment, agency, and/or representation of the MSU Defendants was a breach of the duty to use ordinary care.

446.    As a direct and/or proximate result of Defendants' conduct, actions and/or inactions, the USAG Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and

obtaining the full enjoyment of life and have sustained and continue to sustain loss of potential

earnings and/or future earning capacity; and have required and will continue to require treatment,

therapy, counseling, and hospitalization (if needed in future) to address the mental anguish and

despair caused by Defendants actions.

## X.  COUNT TWENTY-FOUR

### VICARIOUS LIABILITY AGAINST DEFENDANT USAG

447.    Plaintiff realleges and incorporates by reference the allegations contained in the

previous paragraphs as if fully restated herein.

448.    Vicarious liability is indirect responsibility imposed by operation of law where an

employer is bound to keep its employees within their proper bounds and is responsible if it fails

to do so.

449.    Vicarious liability essentially creates agency between the principal and its agent,

so that the principal is held to have done what the agent has done.

450.    The MSU Defendants employed and/or held Defendant Nassar out to be its agent

and/or representative from approximately 1996 to sometime in 2016.

451.    Defendant USAG's website contains sites portraying Defendant Nassar as the

recipient of distinguished awards and boasts him as having been "instrumental" to the success of

USA gymnastics.[40]

452.    Defendant USAG employed and/or held Defendant Nassar out to be its agent

and/or representative form approximately 1986 to 2015.

453.    Defendant USAG is vicariously liable for the actions of Defendant Nassar as

---

[40] For example, *see,* https://usagym.org/pages/post.html?PostID=14677&prog=h.

described above that were performed during the course of his employment, representation, or agency with Defendant USAG and while he had unfettered access to young female athletes.

454.     As a direct and/or proximate result of Defendant Nassar's negligence carried out in the course of his employment, agency and/or representation with Defendant USAG, the USAG Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or future earning capacity; and have required and will continue to require treatment, therapy, counseling, and hospitalization (if needed in future) to address the mental anguish and despair caused by Defendants actions.

## Y.  COUNT TWENTY-FIVE

## EXPRESS/IMPLIED AGENCY AGAINST DEFENDANT USAG

455.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

456.     An agent is a person who is authorized by another to act on its behalf.

457.     Defendant USAG intentionally or negligently made representations that Defendant Nassar was their employee, agent, and/or representative.

458.     On the basis of those representations, Plaintiff reasonably believed that Defendant Nassar was acting as an employee, agent, and/or representative of the Defendant USAG.

459.     The USAG Plaintiff was injured as a result of Defendant Nassar's sexual assault, abuse and molestation as described above, acts that were performed during the scope and course of his employment, agency, and/or representation with the Defendant USAG.

72

460.     The USAG Plaintiff was injured because she relied on Defendant USAG to

provide employees, agents, and/or representatives who would exercise reasonable skill and care.

461.     As a direct and/or proximate result of Defendant Nassar's negligence carried out

in the course of his employment, agency, and/or representation with Defendant USAG, the

USAG Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss

of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will

continue to be prevented from performing Plaintiff's daily activities and obtaining the full

enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or

future earning capacity; and have required and will continue to require treatment, therapy,

counseling, and hospitalization (if needed in future) to address the mental anguish and despair

caused by Defendants actions.

### Z.  COUNT TWENTY-SIX

### NEGLIGENT SUPERVISION AGAINST DEFENDANT USAG

462.     Plaintiff realleges and incorporates by reference the allegations contained in the

previous paragraphs as if fully restated herein.

463.     Defendant USAG had a duty to provide reasonable supervision of their employee,

agent, and/or representative, Defendant Nassar, while he was in the scope and course of his

employment, agency or representation with the Defendant USAG and while he interacted with

young female athletes including the Plaintiff.

464.     It was reasonably foreseeable given the known sexual abuse in youth sports, and

gymnastics in particular, that Defendant Nassar who had prior allegations against him had or

would sexually abuse children, including the Plaintiff, unless properly supervised.

465.     Defendant USAG by and through their employees, agents, managers, and/or

assigns, knew or reasonably should have known of Defendant Nassar's conduct and/or that

Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual

interest in children and young adults.

466.    Defendant USAG breached their duty to provide reasonable supervision of

Defendant Nassar, and permitted Defendant Nassar, who was in a position of trust and authority,

to commit the acts against the USAG Plaintiff.

467.    The aforementioned sexual abuse occurred while Defendant Nassar was acting in

the course of his employment, agency and/or representation of Defendant USAG.

468.    Defendant USAG tolerated, authorized and/or permitted a custom, policy, practice

of procedure of insufficient supervision and failed to adequately screen, counsel, or discipline

such individuals, with the result that Defendant Nassar was allowed to violate the rights of

persons such as the USAG Plaintiff with impunity.

469.    As a direct and/or proximate result of Defendant USAG's negligent supervision,

the USAG Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body,

loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and

will continue to be prevented from performing Plaintiff's daily activities and obtaining the full

enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or

future earning capacity; and have required and will continue to require treatment, therapy,

counseling, and hospitalization (if needed in future) to address the mental anguish and despair

caused by Defendants actions.

### AA.    COUNT TWENTY-SEVEN

### NEGLIGENT FAILURE TO WARN OR PROTECT AGAINST DEFENDANT USAG

470.    Plaintiff realleges and incorporates by reference the allegations contained in the

previous paragraphs as if fully restated herein.

471.     Given the direct or indirect knowledge of sexual abuse in youth sports and in particular gymnastics, it was reasonably foreseeable that sexual abuse of minors may occur if proper procedures were not taken by Defendant USAG.

472.     Defendant USAG knew or should have known that Defendant Nassar posed a risk of harm to the USAG Plaintiff or those in the USAG Plaintiff's situation.

473.     Defendant USAG had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

474.     The MSU Defendants knew or should have known that Defendant Nassar previously committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

475.     Defendant USAG had a duty to warn or protect the Plaintiff and others in Plaintiff's situation against the risk of injury by Defendant Nassar.

476.     The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar in his capacity as an employee, agent, and/or representative of the Defendant USAG and the USAG Plaintiff.

477.     Defendant USAG breached said duty by failing to warn USAG Plaintiff from Defendant Nassar.

478.     Defendant USAG breached its duties to protect the USAG Plaintiff by failing to detect and/or uncover evidence of sexual abuse and sexual assault, investigate Defendant Nassar, adjudicate and suspend and/or ban Defendant Nassar from USAG affiliation and USAG sanctioned events.

479.     Defendant USAG failed to adequately screen, counsel and/or discipline Defendant

Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician in his capacity as an employee, agent, and/or representative of Defendant USAG, resulting in violations of the USAG Plaintiff's rights.

480.    Defendant USAG willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect the USAG Plaintiff from Defendant Nassar's conduct.

481.    As a direct and/or proximate result of Defendant USAG's negligent failure to warn or protect, USAG Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or future earning capacity; and have required and will continue to require treatment, therapy, counseling, and hospitalization (if needed in future) to address the mental anguish and despair caused by Defendants actions.

## BB.    COUNT TWENTY-EIGHT

## NEGLIGENT FAILURE TO TRAIN OR EDUCATE AGAINST DEFENDANT USAG

482.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

483.    Defendant USAG breached its duty to take reasonable protective measures to protect the USAG Plaintiff and other minors from risk of childhood sexual abuse and/or sexual assault by Defendant Nassar, such as the failure to properly train or educate the Plaintiff and other individuals (including minors) about how to avoid such a risk.

484.    Defendant USAG failed to implement reasonable safeguards to:

    c.   Prevent acts of sexual assault, abuse, and molestation by Defendant Nassar;

    d.   Avoid placing Defendant Nassar in positions where he would be in
         unsupervised contact and interaction with Plaintiff and other young athletes.

485.      As a direct and/or proximate result of Defendant USAG's negligent failure to train or educate, the USAG Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or future earning capacity; and have required and will continue to require treatment, therapy, counseling, and hospitalization (if needed in future) to address the mental anguish and despair caused by Defendants actions.

## V.  <u>COUNT TWENTY-NINE</u>

### <u>NEGLIGENT RETENTION AGAINST DEFENDANT USAG</u>

486.      Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

487.      Defendant USAG had a duty when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents and/or representatives to exercise due care, but they failed to do so.

488.      Defendant USAG was negligent in the retention of Defendant Nassar as an employee, agent, and/or representative in their failure to adequately investigate, report and address complaints about his conduct of which they knew or should have known.

489.      Defendant USAG was negligent in the retention of Defendant Nassar as an

employee, agent, and/or representative when after they discovered, or reasonably should have discovered Defendant Nassar's conduct which reflected a propensity for sexual misconduct.

490.    Defendant USAG's failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to and sexually abusing and/or sexually assaulting the Plaintiff and an unknown number of other individuals.

491.    The aforementioned negligence in the credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Nassar created a foreseeable risk of harm to the USAG Plaintiff as well as other minors and young adults.

492.    As a direct and/or proximate result of Defendant USAG's negligent retention, the USAG Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or future earning capacity; and have required and will continue to require treatment, therapy, counseling, and hospitalization (if needed in future) to address the mental anguish and despair caused by Defendants actions.

### W.  COUNT THIRTY

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### AGAINST THE DEFENDANT USAG

493.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

494.    Defendants USAG allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults.

495.    A reasonable person would not expect the Defendant USAG to tolerate or permit

their employee or agent to carry out sexual assault, abuse, or molestation.

496.     Defendant USAG held Defendant Nassar in high esteem and acclaim which in turn encouraged the Plaintiff and others to respect and trust Defendant Nassar and seek out his services and to not question his methods or motives.

497.     Defendant USAG protected Defendant Nassar in part to bolster and sustain his national and international reputation in the gymnastics community.

498.     A reasonable person would not expect Defendant USAG to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse, and molestation.

499.     Defendant USAG's conduct as described above was intentional and/or reckless.

500.     As a direct and/or proximate result of Defendant USAG's conduct, the USAG Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or future earning capacity; and have required and will continue to require treatment, therapy, counseling, and hospitalization (if needed in future) to address the mental anguish and despair caused by Defendants' actions.

## X.  COUNT THIRTY-ONE

### FRAUD AND MISREPRESENTATION AGAINST DEFENDANT USAG

501.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

502.     From approximately 1996 to summer 2015, the Defendant USAG represented to

the USAG Plaintiff (and additional Plaintiffs who have filed actions similar to this action) and the public that Defendant Nassar was a competent and safe physician.

503.    By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, the Defendant USAG represented to USAG Plaintiff and the public that Defendant Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiffs and the public need not worry about being harmed by Defendant Nassar.

504.    The representations were false when they were made as Defendant Nassar had an was continuing to sexually assault, abuse, and molest the Plaintiff and an unknown number of other individuals.

505.    Additionally, complaints were made to Defendant USAG, yet Defendant USAG did not contact their members, including the USAG Plaintiff, the MSU Defendant, or any other clubs, or organization affiliated with Defendant Nassar to inform them of the allegations and potential harm to USAG Plaintiff and others.

506.    The USAG Plaintiff relied on the assertions of Defendant USAG and several Plaintiff continued to seek treatment of Defendant Nassar in the wake of known concerns and dangers.

507.    The USAG Plaintiff was subjected to sexual assault, abuse, and molestation as a result of Defendant USAG's fraudulent misrepresentations regarding Defendant Nassar.

508.    As a direct and/or proximate result of Defendant USAG's fraudulent misrepresentations, the USAG Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and

obtaining the full enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or future earning capacity; and have required and will continue to require treatment, therapy, counseling, and hospitalization (if needed in future) to address the mental anguish and despair caused by Defendants' actions.

## VIII.   CLAIMS AGAINST NASSAR

### Y.  COUNT THIRTY-TWO

### ASSAULT AND BATTERY AGAINST DEFENDANT LAWRENCE NASSAR

509.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

510.    The acts committed by Defendant Nassar against Plaintiff described herein constitute assault and battery, actionable under the laws of Michigan.

511.    Defendant Nassar committed nonconsensual sexual acts which resulted in harmful or offensive contact with the body of the Plaintiff.

512.    Specifically, Defendant Nassar committed acts which caused injury to Plaintiff by subjecting her to an imminent battery and/or intentional invasion of her right to be free from offensive and harmful contact, and said contact demonstrated that Defendant had a present ability to subject the Plaintiff to an immediate, intentional, offensive and harmful touching.

513.    Defendant Nassar assaulted and battered Plaintiff by nonconsensual and unwanted digital vaginal penetration, touching, rubbing and manipulating Plaintiff's genital area and smacking, hitting, rubbing and manipulating Plaintiff's buttocks without notice or explanation of the "treatment."

514.    Plaintiff did not consent to the contact, which caused injury, damage, loss and/or harm.

515.    As a direct and/or proximate result of Defendant Nassar's assault and battery, the Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or future earning capacity; and have required and will continue to require treatment, therapy, counseling, and hospitalization (if needed in future) to address the mental anguish and despair caused by Defendants' actions.

## Z.  COUNT THIRTY-THREE

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### AGAINST DEFENDANT LAWRENCE NASSAR

516.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

517.    Defendant Nassar used his authority and position with Defendants MSU and USAG to sexually assault, abuse, and molest Plaintiff and an unknown number of other individuals, minors, and young adults.

518.    Defendant Nassar in committing acts of sexual assault, abuse, and molestation as described above under the guise of medical "treatment" exhibited conduct that is extreme, outrageous and/or reckless in nature.

519.    A reasonable person would not expect their physician sexually assault, abuse, or molest them, and to do so under the guise of medical "treatment" without proper notice or explanation, and without giving the patient the opportunity to refuse "treatment" of that nature.

520.    Defendant Nassar's conduct was intentional or reckless as he repeatedly sexually assaulted, abused, and molested Plaintiffs over several years, from approximately 1996 to 2016.

521.     Defendant Nassar's conduct has caused and continues to cause Plaintiffs to suffer emotional and psychological distress.

522.     As a direct and/or proximate result of Defendant Nassar's outrageous conduct, Plaintiff suffered discomfort and pain and continue to suffer pain of mind and body, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life and have sustained and continue to sustain loss of potential earnings and/or future earning capacity; and have required and will continue to require treatment, therapy, counseling, and hospitalization (if needed in future) to address the mental anguish and despair caused by Defendants' actions.

## IX.    DAMAGES-FOR ALL CAUSES OF ACTION

523.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

524.     As a direct and/or proximate result of Defendants' action and/or inactions stated above, Plaintiff suffered discomfort, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; have sustained and continue to sustain loss of earnings and earning capacity; and have required and will continue to require treatment, therapy, counseling, and hospitalization (if needed in future) to address mental anguish and despair caused by Defendants' actions.

525.     The conduct, actions and/or inactions of Defendants as alleged in the above stated

counts and causes of action constitute violations of Plaintiff's Constitutional and Federal rights as well as the common and/or statutory laws of the State of Michigan, and the United States District Court has jurisdiction to hear and adjudicate said claims.

526.    In whole or in part, as a result of some or all of the above actions and/or inactions of Defendants, Plaintiff has and continues to suffer irreparable harm as a result of the violations.

527.    The amount in controversy for the Plaintiff exceeds the jurisdictional minimum of $75,000.00.

**WHEREFORE,** the Plaintiff respectfully requests this Court and the finder of fact to enter a judgment in Plaintiff's favor against all named Defendants on all counts and claims as indicated above in an amount consistent with the proofs of trial, and seeks against Defendants all appropriate damages arising out of law, equity, and fact for each or all of the above counts where applicable and hereby requests that the trier of fact, award the Plaintiff all applicable damages, including but not limited to compensatory, special, exemplary and/or punitive damages, in whatever amount the Plaintiffs are entitled, and all other relief arising out of law, equity, and fact, also including but not limited to:

a)    Compensatory damages in an amount to be determined as fair and just under the circumstances, by the trier of fact including, but not limited to medical expenses, loss of earnings, mental anguish, anxiety, humiliation, and embarrassment, violation of Plaintiff's Constitutional, Federal and State rights, loss of social pleasure and enjoyment, and other damages to be proved;

b)    Punitive and/or exemplary damages in an amount to be determined as reasonable or just by the trier of fact;

c)    Reasonable attorney fees, interest, and costs; and

d)    Other declaratory, equitable, and/or injunctive relief, including, but not limited to implementation of institutional reform and measures of accountability to ensure the safety and protection of young athletes and other individuals, as appears to be reasonable and just.

Respectfully submitted,

*The Coleman Justice Center*

/s/ April Kreger
April Kreger (P69319)
Judy C. Coleman (P44310)
*Attorneys for the Plaintiff*
17286 Farmington Rd.
Livonia, Michigan 48152
(734) 744-9410

Dated:  September 10, 2018

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF MICHIGAN**

JANE A. DOE by next friend
JANE B. DOE,

                    Plaintiff,                Case No. 18-cv-

vs.                                        Hon.


MICHIGAN STATE UNIVERSITY;
THE BOARD OF TRUSTEES OF
MICHIGAN STATE UNIVERSITY;
LAWRENCE GERARD NASSAR,
individually and in his official capacity;
USA GYMNASTICS, INC.;
TWISTARS USA, INC. d/b/a GEDDERTS' TWISTARS
GYMNASTICS CLUB USA,

                    Defendants.

_____/

**THE COLEMAN JUSTICE CENTER**
April Kreger (P69319)
Judy C. Coleman (P44310)
*Attorneys for the Plaintiff*
17286 Farmington Rd.
Livonia, Michigan 48152
(734) 744-9410
april@thecolemanjusticecenter.com
judy@thecolemanjusticecenter.com

_____/

**<u>JURY DEMAND</u>**

Plaintiff, JANE A. DOE, by her next friend, JANE B. DOE, by her attorneys, THE COLEMAN

JUSTICE CENTER, by APRIL KREGER and JUDY C. COLEMAN, hereby demand a trial by

jury on all claims set forth above.

                                     Respectfully submitted,

                                     *The Coleman Justice Center*

/s/ April Kreger
April Kreger (P69319)
Judy C. Coleman (P44310)
*Attorneys for the Plaintiff*
17286 Farmington Rd.
Livonia, Michigan 48152
(734) 744-9410

Dated:  September 10, 2018